In the Matter of the Claim of ESTHER GRYZIEC, by SHARON A. MIGLIACCIO, as Administratrix of the Estate of ESTHER GRYZIEC, Deceased, Respondent, v RONALD A. ZWEIBEL et al., Appellants.

Fourth Department, April 8, 1980

*Robert Abrams, Attorney-General (Franklin K. Breslor* and *William J. Kogan* of counsel), for appellants.

*O'Shea, Griffin, McDonald, Hurd & Stevens (Timothy B. O'Shea* of counsel), for respondent.

### OPINION OF THE COURT

HANCOCK, JR., J. P.

We consider in this appeal, two interrelated questions arising from a determination by the Crime Victims Compensation Board (Executive Law, art 22, §§ 620-635):

1. Whether an estate of an eligible person may pursue a claim either in its own right as a claimant under section 624 of the Executive Law or as a holder of a claim which vested in a deceased claimant prior to death; and

2. How and by whom an award may be made under section 631 of the Executive Law.

The unfortunate events leading to this CPLR article 78 proceeding brought by petitioner-respondent, Sharon A. Migliaccio, as administratrix of the estate of her mother, Esther Gryziec, we may summarize quickly.

On November 7, 1976, Stanley E. Gryziec, the husband of Esther Gryziec and the father of petitioner, was shot to death. Unquestionably, he was an innocent victim of crime. Esther Gryziec filed a claim for crime victims compensation on December 29, 1976 which the board, through one of its members, Commissioner George L. Grobe, Jr., denied, without prejudice, because necessary information had not been supplied. In an amended decision on October 12, 1977, Commissioner Grobe denied Mrs. Gryziec's renewed claim—again for the reason that requested information had not been submitted. Mrs. Gryziec reopened the claim once more on January 20, 1978 through a letter by her attorney who supplied the necessary information with the letter and in subsequent communications with Edward T. Kelly, an investigator employed by the Crime Victims Compensation Board. During the morning of June 27,

1978, a conversation took place between Investigator Kelly and Mrs. Grzyiec's attorney. Petitioner's version of the conversation is that Kelly advised her mother's lawyer that an award had been made and that Kelly discussed the details of the award including the exact amount and how and when it would be paid. Kelly, in a sworn affidavit, denies that he ever said that "an award had been made" but states that he advised the attorney that he was making a recommendation for an award.[1]

In the late afternoon of June 27, 1978, Mrs. Gryziec died.

On July 10, 1978, Commissioner Grobe denied the claim in a written decision stating that as a result of the claimant's death, there was no eligible person to whom an award could be made. On review of Commissioner Grobe's decision, pursuant to section 628 of the Executive Law, undertaken at the request of Mrs. Gryziec's attorney, the full three-member board affirmed the decision stating that "there is no eligible claimant to receive an award."

In a judgment rendered under CPLR article 78, without a written decision, Special Term determined that: "on June 27, 1978, a lump sum award of benefits, in the amount of $5,910.00 representing the monthly payment in the amount of $263.93 per month from November 7, 1976 until November 1, 1978, was awarded by the Crime Victims Compensation Board to the Claimant, Esther Gryziec"; and it directed payment of the award to petitioner as administratrix of the estate of Esther Gryziec. There should be a reversal.

I

We reject the contention that an estate may qualify as a claimant eligible for an award from the Crime Victims Compensation Board under article 22 of the Executive Law. The language of section 624 of the Executive Law, which prescribes the qualifications for eligibility, plainly indicates that a

---

1. In his affidavit, Kelly states that he gave the attorney the "recommended amount" he was submitting to board member George L. Grobe, Jr., for decision. He says that he asked the attorney to submit the amount of his requested attorney's fee to be included with his report to board member Grobe and that this practice was standard operating procedure. His affidavit contained the following statement: "I have been an investigator with the State of New York since 1958, and it has been my firm practice for many years when speaking to attorneys for claimants on such matters to clearly indicate that any actions taken by me on a claim are only in the nature of recommendations, which may be accepted, rejected, or modified by the Board or Board Member, which has the decision-making power on a claim."

claimant, as contemplated by the section, is intended to be a living natural person—i.e., the actual crime victim, if he is living, or a person dependent for principal support upon a victim who died as a result of a crime, including a surviving spouse, parent or child of such deceased victim.[2]

That those eligible for an award under article 22 must be "persons" and cannot be estates or other impersonal entities is demonstrated by the definition of "claimant" in section 621 of the Executive Law as "the person filing a claim pursuant to this article" and by the language in the "Declaration of policy and legislative intent" (Executive Law, § 620) recognizing that "many innocent persons suffer personal physical injury or death as a result of criminal acts" and that such "persons or their dependents may * * * incur financial hardships, or become dependent upon public assistance."

Moreover, the conclusion that the purpose of article 22 is to alleviate presently existing and continuing financial hardship being suffered by the innocent victims of crime and those persons who are dependent upon them for support, is compelled by the specific statutory requirement that if the board "finds that the claimant will not suffer serious financial hardship" in the event that article 22 financial support is *not* given, the board "shall deny an award" (Executive Law, § 631, subd 6). It is obvious that the estate of a widow of a crime victim cannot suffer the ongoing "serious financial hardship" which article 22 is designed to relieve[3] and which is the *sine*

---

2. "§ 624. Eligibility

"1. Except as provided in subdivision two of this section, the following persons shall be eligible for awards pursuant to this article:

"(a) a victim of a crime;

"(b) a surviving spouse, parent or child of a victim of a crime who died as a direct result of such crime; and

"(c) any other person dependent for his principal support upon a victim of crime who died as a direct result of such crime.

"2. A person who is criminally responsible for the crime upon which a claim is based or an accomplice of such person or a member of the family of such persons shall not be eligible to receive an award with respect to such claim."

It is noted that Sharon A. Migliaccio as a surviving child of the victim, Stanley E. Grzyiec, might have filed a claim in her own right as an "eligible person" under section 624 of the Executive Law, provided, of course, she could establish that she was dependent upon him for her principal support and that the necessary finding of "serious financial hardship" could be made in compliance with subdivision 6 of section 631 of the Executive Law.

3. See Memorandum of Administration (NY Legis Ann, 1966, pp 16-17), setting forth the details of the proposed Crime Victims Compensation Board legislation and

*qua non* of any award. We hold, therefore, that the estate of Esther Gryziec, through petitioner as administratrix, has no standing in its own right as a claimant under article 22 of the Executive Law.

Nor may the estate representative of a "person" who would have been eligible for crime victims compensation (Executive Law, § 624) pursue a claim as an asset of the estate upon the ground that the claim vested prior to the eligible person's death. An innocent crime victim or his dependent who suffers injury or financial hardship as a result of a crime, absent a showing of a breach of some special duty or undertaking, has no right of redress against the State or its subdivisions. (See *Riss v City of New York*, 22 NY2d 579, 583.) In view of this fact and recognizing the need for government financial assistance for such victims of crime, the Legislature enacted article 22 of the Executive Law (see Executive Law, § 620, entitled "Declaration of policy and legislative intent"). Article 22 creates no legally cognizable cause of action or right of recovery which can be said to vest in a person claiming to be eligible for an award under article 22. On the contrary, the statute establishes a board to render financial aid to victims or their dependents, in limited circumstances, not as a matter of legal right but specifically as "a matter of grace"[4] (Executive Law, § 620; see *Matter of Johnsen v Nissman*, 39 AD2d 578). Thus, until the board has made the necessary finding of

---

quoting the statement of Governor Rockefeller on October 23, 1965 to a special committee appointed by the Governor "to develop legislation to provide financial assistance to families in New York State who suffer deprivation because one or more of the family have been victims of violent crime." The Governor said, in part:

" 'Our correctional institutions carry out programs of rehabilitation to those convicted of crime, hopefully to restore them to useful and productive citizenship, but little if any help is given to the innocent victims or those dependent upon them.

" 'I am directing this committee to give special attention to cases such as that of the family of Arthur F. Collins, the young man murdered in a New York City subway on October 9. In this tragic case, Mr. Collins' widow and 15-month-old daughter are surely the victims of violent crime. My committee will search out ways for society to extend a helping hand to individuals who suffer as the Collins family is suffering.' "

4. Indeed, from the time of its enactment in 1966 until the statute was amended in 1976 the power of the board to grant or deny an award in its discretion as a matter of grace was, from the standpoint of an unsuccessful or disappointed claimant, absolute and final and was, by the express terms of the statute, exempt from judicial review. (See former Executive Law, § 629 [L 1966, ch 894] specifically prohibiting judicial review except by the Attorney-General or the Comptroller if, in their judgment, the award was improper or excessive.) Subdivision 1 of section 629 as amended (L 1976, ch 952, § 5, eff Jan. 1, 1977) now specifically permits review by a claimant in a CPLR article 78 proceeding.

"serious financial hardship" (Executive Law, § 631, subd 6) and exercised its power to make an award as a matter of grace, a claimant can have no legally enforceable right.

The scheme of article 22 of the Executive Law constitutes a limited departure from the common law and should be strictly construed (McKinney's Cons Laws of NY, Book 1, Statutes, § 301; *Matter of Bayswater Health Related Facility v Karagheuzoff*, 37 NY2d 408, 414). No attempt was made by the Legislature to remedy all of the wrongs that may flow from crime, or to make whole all victims of crime. The intent of article 22 was to assist only those victims or their dependents who suffer severe financial hardship as a result of crime. The scheme contemplates and permits neither awards to the estates of claimants, nor the vesting of benefits before an award is made.

## II

Petitioner would have us uphold the award, alternatively, on the ground adopted by Special Term, i.e., that the award had, in fact, been made prior to Mrs. Gryziec's death on June 27, 1978. The record shows conclusively, however, that no award had been made.

The statements of Investigator Kelly made to petitioner's attorney on June 27, 1978 concerning the details of the award, even if established by competent evidence, cannot constitute an award. The power to hear and determine claims is vested exclusively in the Crime Victims Compensation Board (Executive Law, §§ 623, 627), and the procedures pertaining to the investigation and hearing of claims and to the making of decisions and awards are specified in detail in sections 627 and 631 of the Executive Law. Section 627 provides that each claim, after it is accepted for filing, "shall be assigned by the chairman to himself or to another member of the board" (Executive Law, § 627, subd 1); that the board member "shall examine the papers * * * [and] cause an investigation to be conducted into the validity of such claim" (Executive Law, § 627, subd 2); and that *the board member to whom such claim was assigned shall make a decision"* either granting an award or denying the claim (Executive Law, § 627, subd 5; emphasis added). It also directs that the "board member making a decision shall file with the secretary a written report setting forth such decision" and that "[t]he secretary

shall thereupon notify the claimant and furnish him a copy of such report" (Executive Law, § 627, subd 6). Thus, by clear statutory mandate, it is only the board or a member thereof who may make a decision or award. Moreover, as noted, even the power of the board or board member to make an award is, by express statutory provision, limited to those cases where an affirmative finding has been made that the claimant will "suffer serious financial hardship" if not granted financial assistance pursuant to article 22 (Executive Law, § 631, subd 6).

There is no indication in the record that a written decision favorable to the claimant was ever made by the board or a board member prior to June 27, 1978. Petitioner does not claim that she or her attorney received a copy of a favorable decision or that any such decision was filed with the secretary of the board (Executive Law, § 627, subd 6). Nor is there any showing that the finding of "serious financial hardship" specifically required by the statute was made (Executive Law, § 631, subd 6).

The hearsay statement in the petition that Investigator Kelly reportedly told petitioner's attorney that an award had been made is not evidence of the fact that a written decision and award had been made by the board or a member thereof in compliance with sections 627 and 631 of the Executive Law.[5] Because no award had been made prior to Esther Grzyiec's death on June 27, 1978 and because her estate could not qualify as an "eligible person" thereafter, we are constrained to conclude that there is no possible basis for affirming the judgment at Special Term.

The judgment, therefore, should be reversed and the petition dismissed.

SCHNEPP, CALLAHAN, DOERR and WITMER, JJ., concur.

Judgment unanimously reversed, without costs and petition dismissed.

---

5. Nor can there be any probative value to petitioner's hearsay averment concerning statements allegedly made by Chairman Zweibel and Commissioner Gottlieb to the effect that an award had been made. Such statements allegedly made at the time of the hearing in Syracuse attended by petitioner's counsel on January 11, 1978 are denied in sworn affidavits made by Chairman Zweibel, Commissioner Gottlieb and board member Angelo Petromelis.