NEW YORK STATE DEPARTMENT OF AUDIT AND CONTROL, Petitioner, v CRIME VICTIMS COMPENSATION BOARD et al., Respondents. (And Three Other Related Proceedings.)

Third Department, August 7, 1980

### APPEARANCES OF COUNSEL

*Robert Abrams,* Attorney-General (*Ronald I. Eisenstein, John D. Charles* and *Shirley Adelson Siegel* of counsel), for petitioner.

*Paul S. Hudson* for Crime Victims Compensation Board, respondent.

*Shea & Gould* (*Eva Posman* of counsel), for Sarg L. Eisenberg, respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

These four related proceedings involve the propriety of loss of earnings awards granted by the Crime Victims Compensa-

tion Board, pursuant to article 22 of the Executive Law, to uniformed police officers injured in the line of duty. Although all four received their full base salary, three were deprived of night shift differential pay due to their inability to work following their injuries, and a fourth was unable to work overtime as a result of his injury.*

Considering that each of the police officers received his full base salary, medical care and other benefits during his period of recuperation and that each incurred no loss of unreimbursed out-of-pocket expenses as the result of his injuries, the awards should be annulled.

The awards given by the board to the individual claimants are illegal and excessive on the basis that there has been no showing that the claimants will suffer "serious financial hardship" as a result of the losses incurred (Executive Law, § 631, subd 6). The board, in attempting to justify the awards, points to one of its own regulations which gives it discretion to exempt "an amount not exceeding the victim's or claimant's annual income" when considering whether a financial loss is severe (9 NYCRR 525.9 [c] [1]). However, the board has no statutory authority to exempt any assets from consideration, be it discretionary or mandatory, since subdivision 6 of section 631 of the Executive Law specifically states that "[i]n determining such serious financial hardship, the board * * * *shall* consider *all* of the financial resources of the claimant" (emphasis added). Since the board's regulation runs counter to the clear wording of the statute, it should not be given any weight (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459;

---

* The respondent Hughes had a base salary when injured on August 23, 1978 of $20,555 per annum (raised to $21,318 within a month of his injury). His financial resources consisted of savings of $240. His award was $1,207.05 for unreimbursed night shift pay differential computed on the basis of $92.85 per month, net, for 13 months from the date of injury to September 22, 1979.

The respondent Eisenberg had a base salary when injured on February 28, 1979 of $22,221.42. He had no financial resources. His award was $355.47 for unreimbursed night shift pay differential computed on the basis of $142.19 per month for two and one-half months from March 1, 1979 to May 18, 1979.

The respondent Sack had a base salary when injured on December 16, 1978 of $21,149.70. He had financial resources of $1,000 with liabilities of $4,800. His award was $1,120 for unreimbursed night shift pay differential computed on the basis of $20 per week for 56 weeks from December 16, 1978 to January 11, 1980.

The respondent Melucci, a transit authority police officer, had a base salary of $18,500.56 when injured on December 12, 1978. He had a savings account of $4,000. His award was $431.65 for loss of regularly scheduled overtime computed on the basis of $8.90 per hour for 48½ hours from December 12, 1978 to April 26, 1979.

*Matter of Adams [Government Employees Ins. Co.],* 52 AD2d 118, 121, mot for lv to app dsmd 40 NY2d 1080). Accordingly, the board's determinations must be annulled.

The determinations should be annulled, without costs.

CASEY, J. (concurring). I agree with the majority that the claimants herein have failed to demonstrate the "serious financial hardship" required by subdivision 6 of section 631 of the Executive Law, and that the awards made to them by the respondent board should be annulled for that reason. I would go further, however, and invalidate the board's regulations on which its determination of "serious financial hardship" is based. These regulations, excluding from such consideration a homestead (9 NYCRR 525.9 [b] [1]), a family automobile (9 NYCRR 525.9 [b] [5]) and making the exemption of the claimant's annual income discretionary (9 NYCRR 525.9 [c] [1]), would qualify almost every citizen of the State for crime victims compensation in the event of a crime related injury, in direct contravention of the express provision of subdivision 6 of section 631 of the Executive Law requiring the board to consider *"all of the financial resources of the claimant"* (emphasis added). The cited regulations should, therefore, be annulled as an improper yardstick by which to measure the determination required to be made by the board.

Furthermore, in my view, article 22 of the Executive Law was never legislatively intended to reimburse police and other peace officers for loss of "extra compensation", such as overtime and night shift salary differentials, incurred as a result of injuries received in the performance of their duty. The declaration of policy and legislative intent contained in section 620 of the article clearly indicate that it is only "innocent persons" who suffer personal physical injury or death as a result of criminal acts and who may thereby "suffer disability", "incur financial hardships" or "become dependent upon public assistance" who qualify for aid, care and support under the act, as a matter of (legislative) "grace".

The presence of an officer at the scene of a crime and his involvement therein flow from the performance of his duty, rather than from his role as a victim. In such circumstances, he is not "the victim" of the crime, nor a "bystander", nor a "passerby" who is injured during its commission. His presence at the scene has a purpose which the performance of his duty compels. When injured in the performance of such duty, he is not within the class of "victims" whom the Legislature sought

to protect by the enactment. The conceded danger inherent in the duty is presumably the reason the officer continues to receive full pay, medical assistance and other benefits when recuperating from the injuries received, and which in the case of these individual claimants ranged from $18,500 per year to $22,200 per year.

The purpose of the legislation is not to make a crime victim financially whole as the result of a crime related injury, but to keep himself and his dependents from suffering unreasonable financial hardship. (See *Matter of Gryziec v Zweibel,* 74 AD2d 9, 14.)

The awards made herein should, therefore, be annulled not only for the failure of the claimants to show financial hardship, but because police and other peace officers when engaged in the performance of their duty are not within the class of crime victims whom the Legislature sought to benefit by article 22 of the Executive Law.

STALEY, JR., J. (dissenting). We are unable to agree with the concurring opinion of Mr. Justice CASEY, which concludes that police and other enforcement officers, who sustain personal physical injury as the result of a crime, when performing their duties, are not within the class of persons whom the Legislature intended to compensate as crime victims.

Subdivision 5 of section 621 of the Executive Law defines "Victim" as "a person who suffers personal physical injury as a direct result of a crime".

Each of the claimants fits within that definition. All were injured and disabled as the direct result of a crime. Section 624 of the Executive Law provides that a victim of a crime is eligible for an award. The detailed statutory scheme for the payment of awards to crime victims is set forth in article 22 of the Executive Law. The act is clear and unambiguous, and contains no exclusion of police officers, or other law enforcement personnel.

It should be noted that the precursor to the enactment of article 22 was the action of the New York City Council to provide indemnification to crime victims. Such legislation was introduced in the New York City Council on February 15, 1966, calling for the awards to persons other than peace officers suffering physical injury as crime victims. The proposed legislation was eventually defeated. Such an exclusion was never included. The State legislation suggests that the

lack of exclusion was deliberate and the intent of the State legislation was that law enforcement personnel should be considered potentially eligible crime victims.

We also disagree with the majority's conclusion that the serious financial hardship which is required in order to qualify for crime victims' compensation under subdivision 6 of section 631 of the Executive Law has not been demonstrated.

In our opinion, the board's findings of serious financial hardship in each of these cases are a reasonable exercise of its discretion within the statute, and the rules and regulations adopted by the board promulgated pursuant to the authority of sections 623 and 631 of the Executive Law. These rules and regulations provide that in determining serious financial hardship the board shall consider all the financial resources of the claimant, and shall exempt certain assets such as a home, furniture, automobile and clothing, and may except an amount not exceeding the claimant's annual income (9 NYCRR 525.9).

In each of these cases, the allowances authorized by the regulations, when excepted from the financial resources, would leave each claimant with no recognizable financial resources. It, therefore, cannot be said that the findings of the board of serious financial hardship are not supported by the evidence, and they are not arbitrary, capricious and illegal.

The decisions of the Crime Victims Compensation Board should be confirmed.

SWEENEY, J., concurs with MAHONEY, P. J.; CASEY, J., concurs in a separate opinion; STALEY, JR., and KANE, JJ., dissent and vote to confirm in an opinion by STALEY, JR., J.

Determinations annulled, without costs.