Honorable Ronald A. Zweibel Chairman Crime Victims Board
Your counsel has asked whether the Crime Victims Board ("Board") must reduce its award to a "good samaritan" crime victim by the amount of any payments received or expected to be received by the victim from New York City under the City's good samaritan program; and whether the Board must defer its decision until the City has made a determination on a claim.
The State Crime Victims Board was formed to provide financial assistance as a matter of grace to the victims of crime in New York State who would suffer serious financial hardship from losses and expenses resulting from their injury (Executive Law, §§ 620, 631[6]; Board created by L 1966, ch 894, effective August 1, 1966). The Crime Victims Compensation Law creates no legally cognizable cause of action or right of recovery (Mtr.of Gryziec v Zweibel, 74 A.D.2d 9, 13 [4th Dept, 1980]; Johnson vNissman, 39 A.D.2d 578 [2d Dept, 1972]). Claims may be filed with the Board by victims of crime or their surviving spouses, parents, children, other dependents and by a member of the victim's family who has paid for the expenses of burying the victim (Executive Law, § 624). Awards are to compensate, within certain limits, for medical expenses and loss of earnings or support and for rehabilitative occupational training (id.,
§ 631[2] and [3]). An award must be reduced by the amount of any payments received or to be received by the claimant as a result of the injury from or on behalf of the person who committed the crime, under insurance programs mandated by law, from public funds, under any contract of insurance wherein the claimant is the insured or beneficiary, or as an emergency award previously made by the Board (id., § 631[4]).
Section 67-3.2 of the New York City Administrative Code authorizes the board of estimate, as a matter of grace, to make a monetary award in the event of the injury or death of a person while engaged in preventing the commission of a crime against the person or property of another, preserving the peace, or preventing a public disturbance ("good samaritan"). In the case of personal injury, the award is to compensate for medical expenses and loss of earnings of the victim (ibid.). In the event of death of the good samaritan, an award may be made to a widow, child or other dependent as prescribed in the code (ibid.). Section 67-3.2 of the Administrative Code was added by Local Law Number 103, effective January 3, 1966.
A local government may not adopt a local law that is inconsistent with a general State law (Municipal Home Rule Law, § 10). Generally, local laws that do not prohibit what State law permits or allow what State law forbids are not considered inconsistent (Wholesale Laundry Board ofTrade, Inc. v City of New York, 17 A.D.2d 327 [1st Dept, 1962] affd12 N.Y.2d 998 [1963]). We do not see any inconsistency between the City and State crime victim programs. There is no evidence of a legislative intent that the State crime victims program occupy the entire field to the exclusion of local enactments (ibid.). On the contrary, the Board has the duty to cooperate with and assist political subdivisions of the State in the development of local programs for crime victims (Executive Law, § 623[12]).
The State and city programs both apply to a New York City good samaritan crime victim. Your counsel has asked whether a Board award must, under section 631(4)(c) of the Executive Law, be reduced by the amount of any award received or to be received by a good samaritan crime victim from the City on the ground that these are "public funds".
It is a fundamental rule of statutory construction that a statute is to be construed as a whole, that all parts of an act are to be read and construed together to determine the legislative intent (McKinney's Statutes, § 97). If possible all parts of an enactment should be harmonized with each other as well as with the general intent of the whole enactment, and meaning and effect should be given to all provisions of the statute (id., § 98).
Thus, while the plain reading of the term, "public funds" in section 631(4)(c) would include any and all payments under the New York City good samaritan program, this alone does not answer the question. For the statute also provides that awards by the Board compensate for "out of pocket expenses", which the statute defines as "unreimbursed" and "unreimbursable" expenses or indebtedness reasonably incurred for medical care or other services as a result of the injury and for rehabilitative occupational training (id., §§ 626, 631[2]). The legislative intent that the Board shall compensate only for unreimbursed loss appears from the statute when read as a whole.
In our opinion, section 631(4)(c) should be read in pertinent part to provide that the award by the Board must be reduced by the amount of payments to the claimant from public funds only to the extent that these actually duplicate the Board's award. A payment by the Board under such circumstances would not be compensation for "unreimbursed" expense or losses.
If Board awards had to be reduced by the amount of payments from other sources whether or not such payments truly duplicate Board payments, many crime victims would receive greatly reduced sums. We believe that such an interpretation would violate the legislative intent as evidenced by a reading of the statute as a whole.
Your counsel asks whether the Board must defer its award until the City has made a determination on a claim for a good samaritan award. The law provides no time constraints on the determination of claims by the Board (Executive Law, §§ 627, 628). There is no requirement in the statute that the Board defer its award pending a determination under a local program. Moreover, the acceptance of an award subrogates the State to any right or right of action accruing to the claimant to recover payments on account of losses resulting from the crime and creates a lien in favor of the State on the proceeds of any recovery from the person(s) liable for the injury or death giving rise to the award (id., § 634). This right of subrogation implies that the Board need not defer an award pending receipt by the claimant of all payments that would mandate a reduction of the award (id., § 631[4]). Whether the local government acts first or last, an award by the Board must be reduced to the extent that it includes payments reimbursed under a local program.
As we have noted, the Board has the duty to cooperate with and assist political subdivisions of the State in the development of local programs for crime victims (id., § 623[12]). Certainly, there is a potential under the present statute for local programs that supplement the State program. For example, there are statutory limits on the amount of Board awards (id., § 631[3]). Local programs might be targeted expressly to pay those expenses of a crime victim that are in excess of these limits and therefore do not duplicate, hence will not reduce, the Board's award. There may be other expenses and services not paid or provided for by the State program that might similarly be authorized under local programs. Agreements could be reached to insure that local awards will supplement, rather than duplicate, Board awards in furtherance of benefiting crime victims. Once such an agreement is reached between the City and the Board, the City could amend Local Law No. 103 (1966) to reflect the terms of the agreement.
We conclude that the Crime Victims Board may include in its award to a claimant payments for expenses and loss of earnings or support that are unreimbursed by payments made under New York City's good samaritan program and from other sources. The Board is not required to defer its award pending a determination of a claim by New York City under such program. The Board could make an agreement with the City to insure that awards will supplement, rather than overlap, Board awards.