Hon. Joan A. Cusack Formal Opinion Chairperson No. 2002-F3 Crime Victims Board 845 Central Avenue, Rm. 107 Albany, New York 12206-8727
Dear Ms. Cusack:
Your counsel has asked our opinion as to whether the Crime Victims Board (the "Board") may pay for equipment to help a crime victim enhance a business already established with funds provided by the Office of Vocational and Educational Services for Individuals with Disabilities ("VESID"). The claimant established a delicatessen with the VESID money, and now wants to supplement the VESID grant with an award from the Board to add improvements, such as a refrigerated display case and two computers, so that the delicatessen can operate as a cybercafé.
In connection with this claimant's application, your counsel has asked three questions:
 May the Board pay the "start-up" costs for a business as rehabilitative occupational training for a crime victim permanently disabled as a result of the crime, where VESID has contributed its statutory maximum?
 May the Board pay for equipment to enhance an already established business, to better enable it to succeed for such a disabled person?
 Is self-employment a reasonable objective of rehabilitative occupational training?
Your counsel refers specifically to Executive Law § 631(2), which authorizes the Board to pay for "rehabilitative occupational training . . . or similar employment-oriented rehabilitative services" for crime victims, as a potential source of the Board's power to pay for start-up or business-enhancement costs.
We conclude that Executive Law § 631 does not authorize the Board to pay for the type of start-up or business-enhancement costs contemplated in questions (1) and (2). Concerning the third question, however, we conclude that determining whether self-employment is an appropriate goal for a particular claimant is a matter for the Board's discretion, so long as the Board finds that the training is appropriate based upon the claimant's "medical and employment history."
Background and Legislative History
At the outset, it is helpful to briefly review the background and legislative history of the statute establishing the Crime Victims Board and in particular, the provision authorizing assistance for rehabilitative occupational training.
The Board was created in 1966 to make available financial assistance to eligible crime victims, or their surviving spouses, children, parents or other dependents, in the form of compensation for losses such as out-of-pocket medical expenses and lost property and wages. Exec. Law §§ 620, 624, 631(2).
In 1982, the Legislature amended Executive Law § 631(2) to provide that, in addition to awards for medical and other services and lost wages, financially-eligible crime victims[1] could also receive grants for "rehabilitative occupational training." L. 1982, ch. 885. The statute, as subsequently amended, directs that:
 [A]n award may be made for rehabilitative occupational training for the purpose of job retraining or similar employment-oriented rehabilitative services based upon the claimant's medical and employment history. For the purpose of this subdivision, rehabilitative occupational training shall include but not be limited to educational training and expenses.
§ 631(2). The statute does not define "rehabilitative occupational training" or "employment-oriented rehabilitative services." However, the legislative history indicates that the Legislature was concerned primarily with job training and related services that would assist the injured crime victim in obtaining new employment.
The language of the 1982 amendment appears to derive from two sources, the 1973 Uniform Victims Reparations Act (which includes "rehabilitative occupational training" as an allowable expense),[2] and the California Victims of Crime Act (which authorizes cash payments for "job retraining or similar employment-oriented rehabilitative services").[3] See Bill Jacket, L. 1982, ch. 885, Attorney General's Legislative Program Memorandum No. 193-82 (referencing similar California program). By combining the language of these statutory references, the New York statute emphasizes the availability of funding for occupational training
and similar rehabilitative services.
The letters and memoranda submitted in 1982 in support of this amendment likewise focus on job retraining and occupational therapy. For example, a letter from Assemblyman Richard N. Gottfried, a primary sponsor of the amendment, explained that by receiving job retraining and other "employment-oriented rehabilitative services," those severely injured by a crime could return to productive employment:
 The purpose of this bill is to authorize expenditures . . . for retraining victims of crime who suffer injuries serious enough to limit or prevent them from pursuing their normal employment without such occupational therapy. . . . .
Any victim who suffers injuries so serious as to limit or preclude them from engaging in their regular employment should be provided the necessary occupational rehabilitative services to allow them to resume as productive and normal a life as possible. For a minimum short-term investment, this bill will offer hopes of a renewed livelihood to those victims needing job retraining or employment-oriented rehabilitation.
Bill Jacket, L. 1982, ch. 885, July 9, 1982 letter of Assemblyman Richard N. Gottfried.
Similarly, the memorandum in support from the Division of the Budget stated that the bill's purpose was to "more quickly return crime victims on compensation benefits to work by providing rehabilitative occupational training to those who do not now receive such services from the Office of Vocational Rehabilitation." Bill Jacket, L. 1982, ch. 885, July 9, 1982 Memorandum in Support of the Division of the Budget.
The language and history of this statutory provision thus indicate that the Legislature was primarily concerned with providing disabled crime victims with job training (including education) and related services. This emphasis on job training is clarified by a subsequent amendment to section 631(2), which, in extending compensation for such services to family members of crime victims, used the single phrase "rehabilitative occupational training." See L. 1986, ch. 309 ("An award for rehabilitative occupational training may be made to a victim, or to a family member of a victim where necessary as a direct result of a crime."); see also L. 1998, ch. 443 (amending Executive Law § 631 to provide victims of stalking who are not physically injured compensation for, inter alia, "occupational or job training").
Analysis
The first two questions you ask are whether the Board may pay the "start-up" costs for a business as rehabilitative occupational training, and whether the Board may pay for equipment to enhance such a business. Because such use of funds appears to go beyond the language and purposes of section 631(2), we conclude that the Board is not authorized to grant the award described.
Since the clear purpose of the 1982 amendment of Executive Law §631(2) was to help crime victims return to a normal life of gainful employment, we believe the provision can be read somewhat expansively to meet this goal where appropriate. Thus, in interpreting the statutory phrase "medical or other services necessary as a result of injury," we previously concluded that the Board could reimburse a paraplegic crime victim for modifications to his home and car to accommodate his handicap. Op. Atty. Gen. No. 84-F5. Such alterations, we concluded, could easily be justified as a necessary medical expense, but could also be viewed as necessary to help a disabled victim return to productive employment — thus taking a rather broad view of what "expenses" could be regarded as associated with rehabilitative job retraining.
However, it seems unlikely that the Legislature intended to cover the payment of costs directly associated with the operation of a private business, whether characterized as "start-up costs" for a business operated by a disabled crime victim, or as the costs of enhancing a previously-established business so that it is more likely to succeed. While the statute does not expressly enumerate the type of "rehabilitative services" that may be included in an award, the Legislature has directed that the available services involve occupational training or similar services. Exec. Law § 631(2). As the courts have recognized, the statutory framework authorizing the Crime Victims Board to make payments to crime victims, "constitutes a limited departure from the common law and should be strictly construed." Matter of Gryziecv. Zweibel, 74 A.D.2d 9, 14 (4th Dep't 1980); Matter of Muscatello v. NewYork State Crime Victims Board, 289 A.D.2d 789 (3d Dep't 2001). "No attempt was made by the Legislature to remedy all of the wrongs that may flow from crime." Matter of Gryziec, 74 A.D.2d at 9.
The business improvements the claimant wishes to make are materially different from the items or services generally connected with occupational training or those previously recognized as being covered by Executive Law § 631(2) — including classes in new business skills, occupational therapy or accessibility modifications to a home or car — because they do not appear to directly help the crime victim compensate or recover from the disabling effects of his injury for the purpose of enabling him to return to gainful employment. Rather, the award contemplated in this case would be for items useful to a business no matter who owned it, not for specialized, remedial items or services.[4]
The third question you ask is whether self-employment is a reasonable objective of rehabilitative occupational training. Nothing in the Board's authorizing legislation defines or restricts the type of "employment" that may be the goal of "employment-oriented rehabilitative services." Rather, the statute only requires that the training or services be based upon "the claimant's medical and employment history." Exec. Law §631(2).
Absent any statutory limitation, whether self-employment is a "reasonable" objective of rehabilitative occupational training will turn on the Board's interpretation of the evidence in each particular case in which the issue arises. The Board may exercise its discretion in each instance to grant or deny rehabilitative services funds, provided that its decision is supported by substantial evidence. See, e.g. Ortiz v.Leak, 214 A.D.2d 840, 841 (3d Dep't 1995) (upholding the Board's decision to deny petitioner vocational rehabilitation benefits based on the weak evidence of her employment limitations). If an otherwise-qualified claimant proposes a course of rehabilitative training designed with the ultimate goal of self-employment, and the Board finds this goal reasonable given the claimant's previous medical and employment history, the Board may award a grant for the training.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] The Board may approve claims exceeding $5,000 only if it determines that the claimant "will suffer financial difficulty" without such an award. Exec. Law. § 631(6)(a).
[2] Unif. Victims Reparations Act § 1(g)(1) (enacted 1973 
repealed as superseded 1996), 11 U.L.A. 60 (1995 Supp. 2002).
[3] Cal. Gov't Code § 13965(a)(5) (Deering 2002).
[4] Although the legislative history of the 1982 amendment indicates that it was intended in part to provide occupational rehabilitative services to disabled crime victims who were unable to receive such services from the Office of Vocational Rehabilitation (now VESID), see
Bill Jacket, L. 1982, ch. 885, Assembly Memorandum in Support July 9, 1982 Memorandum in Support of the Division of the Budget, there is no indication that the Legislature intended the rehabilitation services available under these two statutory schemes to be co-extensive. Thus, although some business start-up costs are expressly available as "vocational rehabilitation services" under the statutes governing VESID,see Educ. Law § 1002(5)(a)(12) (referencing "[t]ools, equipment, initial stocks and supplies"); see also id. § 1008 (same), we conclude that such costs are not included within the meaning of occupational training and rehabilitative services as those terms are used in the crime victims law.