402 So.2d 276 (1981)
Mrs. Katherine Craig TOMPKINS, Individually and as Administratrix of the Estate of Her Deceased Husband, Archie John Tompkins, Jr., and as Natural Tutrix of Their Minor Son, Archie Tompkins, III
v.
KENNER POLICE DEPARTMENT, North River Insurance Company and Marie Smith.
No. 11830.
Court of Appeal of Louisiana, Fourth Circuit.
July 21, 1981.
*277 David Band, Jr., New Orleans, for plaintiff-appellant.
Henderson, Hanemann & Morris, Philip E. Henderson, Houma, for defendants-appellees.
Before SAMUEL, SCHOTT and GARRISON, JJ.
SAMUEL, Judge.
Plaintiff filed this suit individually, as administratrix of the estate of her deceased husband, and as tutrix of their minor son, for damages against the Police Department of the City of Kenner, North River Insurance Company, the department's liability insurer, and Marie Smith, the driver of an automobile involved in a collision in which *278 plaintiff's husband was killed. The suit is based on the alleged failure of an investigating Kenner police officer to notice the body of her husband on the side of the road and summon medical assistance for him in order to prevent his death. The petition also alleges the police department did not properly train its patrolmen to make appropriate accident investigations.
The Kenner Police Department and North River Insurance Company responded with a peremptory exception of no cause of action, based on the premise that the duty owed by a police officer to thoroughly investigate an accident and the duty of a municipal police department to appropriately train its police officers are duties which are not owed to individual members of the public but only to the community at large, so that a breach of these duties will not support a private cause of action against the police department.
Following oral argument, the trial judge maintained defendants' exception, but afforded plaintiff an opportunity to amend. After plaintiff amended, an identical exception was maintained by the trial judge, and plaintiff's case was dismissed. Plaintiff has appealed.
A peremptory exception of no cause of action addresses itself to the legal sufficiency of the petition, and it is triable on the face of the papers. All well pleaded allegations of fact must be accepted as true, and if these allegations set forth a cause of action on any part of the demand, the exception must be overruled.[1] It has been held that when a court can reasonably do so, it should maintain a petition and afford the litigant an opportunity to present his evidence.[2]
Plaintiff's petition alleges: Her husband died in an accident in which an automobile wrongfully executed a left turn into the path of an on-coming motorcycle on which he was a passenger. The force of the impact caused the decedent to be thrown 100 feet into a weeded area on the side of the road. A police officer employed by the City of Kenner investigated the accident shortly after it occurred. The officer arrived on the scene at 8:25 p. m., and called for an ambulance. He then spoke to several witnesses, including the operator of the motorcycle, made measurements for the accident report, and departed the scene at 8:30 p. m., approximately five minutes after his arrival. The officer failed to discover there had been a passenger on the motorcycle and failed to discover plaintiff's husband, who was lying alive, but badly hurt, only a few feet away in a vacant lot.
Approximately two hours after the accident, plaintiff learned of the accident and proceeded with others to the scene, where they discovered plaintiff's husband. He was weak from loss of blood, and declared dead on arrival by hospital emergency room physicians at 11:45 p. m.
Plaintiff amended her petition to specifically allege the operator of the motorcycle could see her husband on the side of the road from his position and told the Kenner police officer either to "get my friend" or to "attend to Archie". The amended petition further alleges the decedent at that time was moaning and rustling in the grass in an apparent attempt to crawl back to the highway, the driver of the motorcycle made this fact known or attempted to make it known to the officer to no avail, and the officer failed to see what he should have seen.
We are obliged to take these alleged facts as true for the purposes of defendant's exception.[3] In so doing, we hold the petition states a cause of action against the Kenner Police Department and its insurer.
The exception is based on the decision of this court in Dufrene v. Guarino,[4] in which we held the negligent inspection of a private business, a cocktail lounge, would not render the City of New Orleans liable to *279 patrons subsequently injured in a fire at that establishment, even if the city conceivably could have prevented the fire by an adequate inspection. The Dufrene language relied upon by defendants reads as follows: [5]
"Now, with sovereign immunity a thing of the past, it is important to precisely define the limit of the State's tort liability. Is the City liable if an injury occurs because of inadequate fire or police protection? In Riss v. City of New York, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968), the court held the city was not liable for an injury that possibly could have been prevented by police protection. The circumstances are as compelling as those in Serpas [La.App., 59 So.2d 492]. A young lady was blinded and scarred by an ex-suitor who had previously threatened her on several occasions hired someone to throw acid in her face. Although her prior complaints to police about danger from this source were substantiated, the court denied recovery. Its opinion pointed out:
"It is necessary immediately to distinguish those liabilities attendant upon governmental activities which have displaced or supplemented traditionally private enterprises, such as are involved in the operation of rapid transit systems, hospitals, and places of public assembly. Once sovereign immunity was abolished by statute the extension of liability on ordinary principles of tort law logically followed. To be equally distinguished are certain activities of government which provide services and facilities for the use of the public, such as highways, public buildings and the like, in the performance of which the municipality or the State may be liable under ordinary principles of tort law. The ground for liability is the provision of the services or facilities for the direct use by members of the public.
'In contrast, this case involves the provision of a governmental service to protect the public generally from external hazards and particularly to control the activities of criminal wrongdoers. (See, e. g., Messineo v. City of Amsterdam, 17 N.Y.2d 523, 267 N.Y. S.2d 905, 215 N.E.2d 163; Motyka v. City of Amsterdam, 15 N.Y.2d 134, 138-139, 256 N.Y.S.2d 595, 596-598, 204 N.E.2d 635, 636-637; Steitz v. City of Beacon, 295 N.Y. 51, 56, 64 N.E.2d 704, 706, 163 A.L.R. 342, 18 McQuillin, Municipal Corporations [3d ed.], §§ 53.79-53.80.) The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. * * * `
This factor was considered by the trial judge and in his well-reasoned written opinion he stated:
`The resolution of the issue posed by these exceptions involves ultimately a police determination properly based on a consideration of the competing benefits sought by each side. The victims point to causation in fact, their very real loss, and the general good to be accomplished by holding public authority responsible in damages for their failure to enforce protective regulations. The agencies rightfully point to the immeasurable and inevitably enormous impact on the public fisc if all agencies are held responsible. The agencies persuasively argue that to impose liability in damages for the failure to enforce regulations might compel the government, by economic necessity, to repeal such regulations and thereby deprive the public of their benefits.

* * * * * *
The foregoing quotation would seem to support defendants' position. However, this court (at page 1100) also made the following statement:
"The cases cited by plaintiff in which the City has been held liable for the torts of its agents all involve factual situations *280 where there is a duty owed to the individual. For example, in Prattini v. Whorton, 326 So.2d 576 (La.App. 4th Cir. 1976), the City was held liable for the negligent act of its police officer agent in directing a bus to move in traffic when it should have been obvious that such a maneuver would cause it to collide with plaintiff's car. As plaintiff points out, directing traffic is a duty carried on for the public good; however, at this moment, the policeman also was obligated to conduct himself in such a way that he did not inflict damage to the property of the individual involved. The motorist was under the explicit direction of the police officer who had the apparent authority to exact his compliance. There was a one-to-one relationship between the city officer and the individual motorist when the injury occurred."
We do not doubt a local government cannot be held liable in cases of failure to enforce a protective regulation when the injuries resulting therefrom are not readily foreseeable and a substantial time passes between the negligent actions and the injuries sustained by a plaintiff. However, in enforcement of a governmental regulation which, through closeness in proximity or time, results in a one-to-one relationship between the police officer and the injured party, the police officer ceases to act only for the public good and at that moment becomes obligated to the individual to conduct himself in such a way as not to cause him unnecessary injury.
Defendants conceive of hypothetical cases in which a municipality would be liable in damages to persons who are mugged, raped, robbed, or burglarized for failure to have appropriate police patrols at the site of the crime. Such hypothetical examples, however, are based on the failure of a police department to possess clairvoyant powers and anticipate commissions of crimes in advance.[6] These are not the facts in the case now before us.
On the contrary, according to the allegations of the petition, the police officer was at the scene of the accident, was told by the injured driver of the motorcycle to attend to his friend at the side of the road, proceeded to investigate the accident, and took no measures whatever to render or obtain medical help for the injured passenger, who eventually died from lack of medical treatment. These facts clearly establish a sufficient closeness in both proximity and time as to create a one-to-one relationship between the officer and the injured party, and the officer's failure to act properly under these facts would render the city liable for his inattention and negligence.
The facts alleged in the petition are even clearer than those in the case of Adamski v. Burdell[7] in which this court held the City of New Orleans liable for the inadequate placing of one-way signs on a street resulting in a driver of a vehicle sustaining injuries when he unknowingly proceeded in the wrong direction on the one-way street.[8]
Since we conclude the well pleaded facts of the petition allege the violation of a duty owed to a specific individual, and not merely violation of a duty owed to the general public, we conclude the trial judge committed error by maintaining defendants' exception of no cause of action.
For the reasons assigned, the judgment appealed from is reversed, the exception of no cause of action is overruled, and this case is remanded to the trial court for further proceedings in accordance with law and the views herein expressed; assessment of costs to await a final determination.
REVERSED AND REMANDED.
NOTES
[1] Haskins v. Clary, La., 346 So.2d 193; Pence v. Ketchum, La., 326 So.2d 831; Hero Lands Company v. Texaco, Inc., La., 310 So.2d 93.
[2] Pence v. Ketchum, supra, note 1.
[3] See cases in note 1, supra.
[4] La.App., 343 So.2d 1097.
[5] Ibid., 1099.
[6] See also Riss v. City of New York, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968), in which the court refused to award damages to a woman blinded and scarred when an ex-suitor who had previously threatened her on several occasions hired someone to throw acid in her face. Although her prior complaints to the police about the danger from her boy friend were substantiated, the court denied recovery. This is another example of a police department's being expected to possess psychic powers.
[7] La.App., 363 So.2d 1316.
[8] See also Prattini v. Whorton, 326 So.2d 576 (La.App. 4th Cir. 1976).