433 So.2d 796 (1983)
J. Burns B. WRIGHT
v.
LOUISIANA POWER AND LIGHT, John Casadaban and Maryland Casualty Company.
RICHARDS EQUIPMENT, INC.
v.
LOUISIANA GAS SERVICE COMPANY, Lloyds London and British Insurance Companies, Inc., T. Simons, Alwynn J. Cronvich, The Jefferson Parish Sheriff's Office and North River Insurance Company of Morristown, New Jersey.
John CASADABAN
v.
LOUISIANA GAS SERVICE COMPANY, LLoyds London and British Insurance Companies, T. Simons, Alwynn Cronvich, the Jefferson Parish Sheriff's Office and North River Insurance Company of Morristown, New Jersey.
U.S. FIDELITY AND GUARANTY COMPANY and Maryland Casualty Company
v.
LOUISIANA GAS SERVICE COMPANY, the Parish of Jefferson, State of Louisiana, Jefferson Parish Sheriff's Office, and Alwynn Cronvich, et al.
Nos. 5-301 to 5-304.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 1983.
Rehearing Denied July 15, 1983.
*797 Patricia Nalley Bowers, Asst. Atty. Gen., Louisiana Dept. of Justice, New Orleans, for State of La., defendant-appellant.
Anthony W. Wambsgans, Cronvich, Wambsgans & Michalczyk, Metairie, for Alwynn J. Cronvich, North River Ins. Co., and Tom Simons, defendants-appellants.
Patrick J. McCabe, Gauthier, Murphy, McCabe & Breslin, Kenner, for John Casadaban, plaintiff-appellee.
John P. Manard, Jr., and Alan T. Rogers, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for Louisiana Gas Service Co., defendant-appellee.
Dan R. Dorsey, River Ridge, for Raymond Richards, and Richards Equipment Co., plaintiffs-appellees.
Gary Breedlove, Francipane, Regan & St. Pee, Metairie, for Maryland Cas. Co., plaintiff-appellee.
*798 David E. Walle, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for U.S. Fidelity and Guaranty Co. and Maryland Cas. Co., plaintiffs-appellees.
David A. Hilleren, Vosbein, Hilleren & Bains, New Orleans, for J. Burns B. Wright, plaintiff-appellee.
Before BOUTALL, GAUDIN and GRISBAUM, JJ.
BOUTALL, Judge.
The four lawsuits comprising this consolidated suit grew out of an explosion and fire which destroyed a commercial building and its contents and injured the occupant of a neighboring building. Named as a defendant was a deputy sheriff who investigated an earlier complaint on the premises. From a judgment in favor of the owner of the building, John Casadaban, the tenants, Richards Equipment, Inc. and Casadaban's insurers, the defendants, Deputy Sheriff Tom Simons, Sheriff Alwynn J. Cronvich, and the State of Louisiana have appealed.
John Casadaban, owner of the building, operated a woodworking shop on one side of the building at 633 Papworth Street, Metairie. On the other side Raymond P. Richards operated Richards Equipment, Inc., a business which sold, serviced and repaired meat processing equipment and machinery. Richards kept in the yard of the premises, directly outside his front door, a propane tank mounted on a trailer, which he had previously used for pressurized hot water cleaning of machinery. He sold the high pressure pump and boiler system but kept the tank and trailer. He asserts that he had an employee remove the valve from the tank to let the contents escape and did not have the tank refilled.
On July 27, 1978, Tom Simons, a deputy sheriff for Jefferson Parish, went to the building at about 6:45 p.m. to investigate a telephone complaint of a "foul odor." He found the hose of the tank inserted in the mail slot of Richards' front door and noticed an odor in the area. After attempting unsuccessfully to close the valve of the tank and calling the Sheriff's office to request an emergency number for the Casadaban business and names of owners of vehicles around the premises, again without success, Simons left to answer another call. At about 9:43 p.m. there was an explosion followed by fire which destroyed the building. J. Burns B. Wright was in the building next door and was cut by flying glass. The cause of the explosion and fire is at issue herein.
Wright filed suit against Louisiana Power and Light, John A. Casadaban, and his insurer, Maryland Casualty Company. He amended to substitute Louisiana Gas Service Company (LGS) as defendant in place of Louisiana Power and Light. More than a year after the explosion he amended to add as defendants Raymond Richards, Richards Equipment, Inc. (Richards, Inc.), the Jefferson Parish Sheriff's Office, Alwynn J. Cronvich, Tom Simons, the State of Louisiana and North River Insurance Company.
John Casadaban and Richards Equipment, Inc., filed separate suits timely against LGS, Lloyds London and British Insurance Companies, Inc., Tom Simons, Alwynn J. Cronvich, the Jefferson Parish Sheriff's Office and North River Insurance Company, and later amended to add the State of Louisiana. Casadaban's insurers, Maryland Casualty Company and United States Fidelity and Guaranty Company, filed suit against the gas company, the Parish, the State, the Sheriff's Office, Cronvich, Simons, Richards, Richards Equipment, Inc., and North River Insurance Company. Simons, Cronvich, and North River filed a third party claim against LGS, Richards, and Richards Equipment, Inc. Casadaban and Maryland Casualty Company filed a third party claim against the Sheriff's Office, Cronvich, Simons, Richards, Inc., and LGS. The four cases were consolidated and tried before a judge.
At the end of plaintiff's case LGS moved for and was granted a dismissal.
The court found that the explosion was caused by an unknown arsonist who rigged the propane tank to discharge into the building. He held Simons negligent in not having taken further action to handle an *799 obviously dangerous situation. Casadaban was awarded damages of $293,715, minus insurance payments of $35,000, while Richards was awarded $102,000. United States Fidelity and Guaranty Company and Maryland Casualty Company, Casadaban's insurers, were awarded $15,000 and $20,000, respectively, the sums they had paid on Casadaban's policies.
Wright's suit was dismissed on an exception of prescription, because the defendants named by him originally were not found liable in solido with the defendants who were cast in judgment.
The issues before this court are: whether gas from the tank caused the fire; whether Deputy Simons owed the plaintiffs a duty of care and was negligent; whether Richards and Casadaban were contributorily negligent; whether they were strictly liable for the harm; and if Simons was liable, whether the award of damages was excessive.
Causation
The trial court found that a gaseous substance from the tank which had been rigged by an arsonist, caused the fire. Conclusive proof of causation was not possible, because the site of the fire was bulldozed between the time the Jefferson Parish Fire Department inspectors left the scene on the night of the fire and 8:00 the next morning, when they returned to evaluate the evidence. The bulldozing was carried out on orders of the Fire Chief to put out the remaining small fires.
Casadaban and Richards testified that in late October or early November, 1977, the tank had been opened to allow the contents to escape, and that they presumed the tank was empty. Ken Roussy, Richards' employee, testified that he opened the valves and disconnected the hose; he was certain the tank was empty. Roussy reconnected the hose after emptying the tank leaving the valve open as he had always left it before. There was no locking device on the tank. It remained in the trailer and was moved only when the grass was cut.
When Deputy Sheriff Simons went to investigate the "foul odor" he found the nozzle inserted in the mail slot and noticed a foam-like substance on the hose at the slot. Three experts testified: James Mazerat and Stephen Hux, who were the primary Fire Department investigators, and Earl Ensor, a senior explosive technician with the Louisiana State Police. Both Hux and Mazerat had a number of years of experience as volunteer and paid firemen and as investigators. Neither had had experience with or specific training in the construction and functioning of gas tanks; both had attended courses that included the study of explosions. Both reported that the positioning of debris prior to the bulldozing indicated that the outer walls and doors had blown out, while the roof was relatively intact and was resting on top of the interior walls. The first course of bricks was knocked from the building's foundation. They believed that the fuel for the explosion was a heavier than air gas, ignited by a spark from an unknown source. The "icing" reported by Simon indicated the presence of gas under pressure. They noticed an odor of rotten eggs when examining the tank and concluded that the gas was propane or butane, which have such an odor and are heavier than air and would cause an explosion that was relatively low to the ground. They ruled out an incendiary or chemical fire, because the building's slab revealed none of the pitting and burn marks or craters that such fires produce. The investigators made no attempt to search for ignition sources in the rubble, believing it to be too costly in terms of man-hours to do so. The investigators did not have the tank tested for its contents because the fire department had no equipment for testing and they were not authorized to send the tank to a private laboratory. Ensor's testimony was limited to a step by step outline of proper procedure for investigating explosions, in the course of which Ensor pointed out the inadequacies of the fire department's investigation of this fire. Interestingly, Ensor testified that propane has the pungent odor of garlic.
We decide that the court drew a reasonable conclusion from the evidence presented. *800 The evidence indicates that the fire and explosion were triggered by a gas, and the positioning of the tank and hose with foam or "icing" on the end supports a conclusion that the gas came from the tank. However as a corollary to that conclusion, it follows that the tank could not have been empty as plaintiffs testified. Either their testimony of emptying the tank is incorrect or it was refilled by someone else or by an arsonist. There are, of course, other possibilities of how the fire started. For example, if plaintiffs are to be believed that the tank was empty, it could not have been the source of ignition. Then natural gas or other combustible gas could have been the source and the tank a red herring. When the trial court reaches a reasonable conclusion based upon sufficient evidence to support it, the appellate court may not substitute other conclusions which may be equally reasonable, but should accept the conclusion reached by the trier of fact. We agree with the court's conclusion that gas from the tank was the cause of the fire.
Liability of Appellants
Who then is responsible for the fire and resulting damage? The positioning of the gas tank and hose rule out any possibility of accidental causation of fire. The tank and hose were deliberately placed by an arsonist whose identity is unknown. We must examine the duties and legal obligations owed by the various defendants with this fact in mind.
The trial judge cast in judgment the deputy sheriff, Tom Simons, and based on his negligence, also cast the sheriff of Jefferson Parish, Alwynn J. Cronvich, and the State of Louisiana. The facts surrounding the activities of the deputy sheriff are not in dispute, but there is a serious dispute as to the applicable law and the extent of the duty owed by the deputy sheriff, and so we set out the facts as found by the trial judge. He stated:
"On July 27, 1978 at approximately 6:45 p.m. Deputy T. Simons responded to a call of a foul odor existing on Papworth Street in Metairie. Arriving on the scene, Simons immediately noticed the tank on the trailer with the hose from the tank inserted into the mail slot of the building and also from the tank. He observed a `white fluffy substance disappearing into water as I watched it.' This white fluffy substance was later described as `ice crystals.'
"Simons tried to close the valve on the propane tank, but it was frozen in the open position. He also tried to remove the hose from the mail slot, but was unsuccessful. He called headquarters attempting to get a registration on the truck parked on the street as well as attempting to get a telephone number for either Casadaban or Richards. The sheriff's office computer was inoperable and he was therefore unable to get the information sought. Simons spent a total of twenty minutes at the scene, including time required for writing his report. He left the scene for another general call and neither he nor headquarters made a follow up on the attempt to contact the owners of the building.
"Approximately three hours after Simons' departure, the explosion and fire occurred causing damage to the building and contents and personal injuries to a neighbor, J. Burns Wright."
To these facts the trial judge applied the principles of Louisiana Civil Code Article 2316 and of American Employers Insurance v. Honeycutt Furniture Company, 390 So.2d 255 (3rd Cir.1980). He noted that the test in this case is whether Deputy Simons performed his service in accordance with the skill usually exercised by others in his profession, and that he is not required to exercise the degree of skill and knowledge which would have been used by a highly qualified expert. Applying that test, the court concluded:
"Any reasonable prudent person in the same position as Simons and with the same knowledge as Simons (that is, common sense) would have done more.
"Simons should have realized that the crime of arson was in progress. He came upon a dangerous situation and left the scene in the same condition as he found *801 it. This Court cannot accept his explanation that he thought the owners were fumigating the premises. This explanation is totally unbelievable after considering his demeanor on the witness stand.
"If this were not a dangerous situation requiring immediate action, why did Simons try to close the valve, try to dislodge the hose from the mail slot, try to get telephone numbers and registration numbers and ask headquarters to follow up? Such a follow up by Simons or headquarters would have prevented this fire and explosion which occurred three hours after Simons' departure."
We conclude that the trial judge imposed too great a duty upon Simons as a matter of law, and that Simons' liability should be reversed. As pointed out in the trial judge's opinion, Simons stands convicted of negligence not because of what he did, but because of what he did not do. As noted by the trial judge he did try to close the valve and he did try to dislodge the hose from the mail slot and he tried to get telephone numbers of plaintiffs and registration information of vehicles parked nearby and asked headquarters to follow up. Unfortunately, he then left the scene to respond to a general call of a robbery and that ended his activities with the "foul odor" call until the explosion which occurred some three hours later. The question we ask in turn is what should a field deputy do when he is faced with the continuation of an investigation into something which appeared to him (although disbelieved by the trial judge) to be a relatively minor affair, and he is faced with a much more serious and immediately dangerous call in another location? Perhaps in retrospect he made an unwise choice, but we cannot say that he was negligent in leaving this scene for the performance of his obligations in a more serious crime. This is not a case where a deputy simply ignores his obligations, but one in which the question is has he done enough. We can place no fault on him for the unavailability of plaintiffs.
Another factor which persuades us in this regard is the fact that plaintiffs testified that the tank was empty and presumably this deputy would have been told, had he contacted them that the tank was empty.[1] We would distinguish this case factually from the case of Tompkins v. Kenner Police Department, 402 So.2d 276 (La.App. 4th Cir.1981), which also involved a lack of action by a policeman. In that case the court held at page 280:
"On the contrary, according to the allegations of the petition, the police officer was at the scene of the accident, was told by the injured driver of the motorcycle to attend to his friend at the side of the road, proceeded to investigate the accident, and took no measures whatever to render or obtain medical help for the insured passenger, who eventually died from lack of medical treatment. These facts clearly establish a sufficient closeness in both proximity and time to create a one-to-one relationship between the officer and the injured party, and the officer's failure to act properly under these facts would render the city liable for his inattention and negligence."
However, in that case the court pointed out that the resolution of such issues involves ultimately a policy determination properly based upon a consideration of the competing benefits sought by each side. In contrast, such cases involve the provision of a governmental service to protect the public generally from external hazards and particularly to control the activities of criminal wrongdoers. The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. In applying those principles to our case, we do not find here the compelling situation imposed upon the officer in Tompkins. Our officer, believable or not, did not consider that he was faced with a dangerous situation and he actually did a number of things *802 to try to alleviate the situation. His lack of activity in not persisting to call plaintiffs is balanced by the plaintiffs' unavailability to be called. If there is any fault in this respect, it would more properly rest on headquarters and not the field policeman.
In this regard we also point out that the fire and explosion did not occur while the deputy was at the premises or even shortly thereafter, but not until some 3 hours later. There is no evidence of what may have occurred in the interval nor what may have triggered the explosion at a somewhat remote time. Considering the fact that the arsonist accomplished the positioning and exhaustion of the tank in less than 45 minutes, it is certainly reasonable to conclude he could have accomplished his crime in the three hour period after the deputy left. There is not sufficient closeness in time to place responsibility for the explosion upon the deputy.
Perhaps the most damaging thing that is said of this policeman is that he failed to call the fire department. We cannot deny that this idea would intrude into the mind of a reasonable man when in retrospect he reflects upon the events which took place, but can we assess negligence upon this officer for failing to do so? We conclude not. This officer made an investigation, did a number of things to alleviate the situation and reported the problems to headquarters, and then left on another more urgent call. We cannot expect perfect performance of an officer, we can only expect reasonable performance under the circumstances.
Liability of Sheriff
In these consolidated suits, Alwynn J. Cronvich, Sheriff of Jefferson Parish, was sued individually and in his official capacity, there being some allegations of direct negligence against him as well as his deputy. The trial judge did not discuss any negligence of the Sheriff beyond that of the deputy and we find no evidence in the record to support a finding of negligence directly against the Sheriff. There is no specific statutory duty imposed upon the Sheriff such as that imposed upon the building officials of the City of Baton Rouge and the Parish of East Baton Rouge as under consideration in the case of Stewart v. Schmieder, 386 So.2d 1351 (La.1980) or that imposed upon the Sheriff as jailor as considered in Frank v. Pitre, 353 So.2d 1293 (La.1978). There is only the obligation to perform his general duties as Sheriff and we see no basis to impose individual liability in this case.
It is clear that the trial judge cast the Sheriff in judgment based upon the activities of his deputy. The delineation of the Sheriff's responsibility for the acts of his deputies is set out in Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La. 1981). Because we conclude that the deputy is not liable, we similarly conclude that the Sheriff is not liable. The same rationale applies to the insurer of the Sheriff and his deputies, North River Insurance Company.
Liability of State of Louisiana
The other defendant held liable was the State of Louisiana, based upon the theory that deputy sheriffs and sheriffs are state officers and thus the State of Louisiana is responsible for their negligent actions. See Foster v. Hampton, 381 So.2d 789 (La.1980). See for comparison Jenkins v. Jefferson Parish Sheriff's Office, supra.
We see no necessity in this case to make such a legal determination because we do not find any liability assessable against the deputy sheriff or the sheriff in this case and accordingly none is assessable against the State. Our determination would simply be dicta.
Liability of Casadaban
Casadaban was the owner of the building destroyed and rented part of the premises to Richards Equipment, Inc. The propane tank was owned by Richards and kept by Richards on the area rented by him. Some time before the fire Casadaban had requested Richards to remove the tank and trailer as an eyesore. He had been assured by Richards that the tank was empty and did not constitute a danger.
We see no liability of Casadaban as the custodian of a thing under Louisiana Civil Code art. 2317 or under the general tort *803 principles of art. 2315. He had neither custody of it nor responsibility for its being used as the fuel source of the fire. Neither do we see any responsibility under LSA-C.C. art. 2322. We do not discern any ruin or neglect attributable to Casadaban. The damage (as to him) was caused by the deliberate action of some third party.
Liability of Richards Equipment, Inc.
The responsibility of Richards in this matter is quite different than that of Casadaban, as the trial judge pointed out:
"Richards maintained the propane tank which was the cause of the explosion. He had custody of the tank. He truly believed that all the gas has been removed from the tank. He was incorrect, however, as this Court finds as a matter of fact that the gas from this tank was the cause of the explosion."
We do not discuss the liability of Richards because it is no longer an issue, as a result of our conclusion that there is no liability of Deputy Sheriff Simons. Procedurally it is unnecessary to determine whether he may be subject to strict liability to any party or negligent or contributorily negligent.

DECREE
Accordingly, we decree as follows:
In case number 5-301, J. Burns B. Wright v. Louisiana Power & Light, et al, we affirm the judgment dismissing plaintiff Wright's suit casting him for the costs attributable to that suit.
In case number 5-302, Richards Equipment, Inc., v. Louisiana Gas Service Company, et al, the judgment in favor of Richards Equipment, Inc., against Tom Simons, Alwynn J. Cronvich, the State of Louisiana and North River Insurance Company is reversed and there is now judgment in favor of said defendants against plaintiff Richard Equipment, Inc., dismissing its suit against them, casting plaintiff for all costs attributable to that suit.
In case number 5-303, John Casadaban v. Louisiana Gas Service Company, et al, the judgment in favor of John Casadaban against Tom Simons, Alwynn J. Cronvich, the State of Louisiana and North River Insurance Company is reversed, and there is now judgment in favor of said defendants against plaintiff John Casadaban dismissing his suit against them, casting plaintiff for all costs attributable to that suit.
In case number 5-304, U.S. Fidelity & Guaranty Co. and Maryland Casualty Company v. Louisiana Gas Service Company, et al, the judgment in favor of United States Fidelity and Guaranty Company against Tom Simons, Alwynn J. Cronvich and the State of Louisiana is reversed, and there is now judgment in favor of said defendants against plaintiff United States Fidelity and Guaranty Company dismissing its suit against them.
Additionally the judgment in favor of Maryland Casualty Company against Tom Simons, Alwynn J. Cronvich and the State of Louisiana is reversed, and there is now judgment in favor of said defendants against plaintiff Maryland Casualty Company, dismissing its suit against them.
United States Fidelity and Guaranty Company and Maryland Casualty Company are assessed with all costs attributable to their suit.
The remainder of the judgment appealed from is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Plaintiffs left the premises at 6:00 p.m. The deputy was there at 6:45 p.m. If the tank was empty, the arsonist had 45 minutes to take away the tank, fill it, bring it back, rig the hose on it, stick it in the door and make his getaway before the deputy arrived.