556 So.2d 978 (1990)
Wanda ZEAGLER, Plaintiff-Appellant,
v.
TOWN OF JENA, Defendant-Appellee.
No. 88 1000.
Court of Appeals of Louisiana, Third Circuit.
February 7, 1990.
Writ Denied April 16, 1990.
Chris Roy, Alexandria, for plaintiff-appellant.
Gold, Weems, Bruser, Sues & Rundell, Henry Bruser, Peggy St. John, Alexandria, Patrick L. Durusau, Jena, for defendant-appellee.
Before DOUCET, KNOLL and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether the trial court correctly dismissed the plaintiff's suit by finding no negligence on the part of defendant.
Wanda Zeagler (hereinafter plaintiff) sued the Town of Jena (hereinafter defendant) for damages for personal injuries which resulted when she was shot by her husband. Plaintiff alleged defendant was liable due to the negligence of its Chief of Police in failing to prevent the shooting. The defendant answered plaintiff's petition denying liability and filed alternative third party demands against Carl Zeagler (hereinafter Carl), plaintiff's husband at the time of the shooting, Susan Pritchard (hereinafter Pritchard), the owner of the *979 home where the shooting occurred, and James Dale Love (hereinafter Love), the man in bed with the plaintiff when she was shot. All three third party defendants filed exceptions of no cause of action which the trial court sustained. The defendant appealed that judgment and this court, in Zeagler v. Town of Jena, 503 So.2d 1137 (La.App. 3 Cir.1987), reversed the judgment of the trial court and reinstated the defendant's third party demands and remanded the matter to the trial court for further proceedings. At the completion of evidence, the trial court took the matter under advisement. On May 2, 1988, the trial court assigned written reasons for judgment, finding no negligence on the part of defendant, and ordered plaintiff's suit and the third party demands dismissed. A formal written judgment was signed on May 13, 1988 dismissing plaintiff's suit and the defendant's third party demands. Plaintiff timely appealed this judgment. The Town answered the appeal contesting the dismissal of its third party demands in the event the judgment of the trial court is reversed and judgment is rendered against it on appeal. We affirm.

FACTS
It all began when plaintiff left home after a fight with her husband, Carl. She went to the home of a friend, Pritchard, seeking companionship and consolation. The two of them ran errands together, "drowned" their sorrows in a couple of bottles of wine and made plans to go to Alexandria, Louisiana later that evening. Before they left for a night on the town, Love, a friend of Pritchard's, dropped by Pritchard's house and joined them on the drinking and the trip to the city. In Alexandria, they shopped, ate dinner, and then partied at the lounge in the Sheraton Hotel until it closed around 2:00 A.M. When they left the Sheraton, they returned to Pritchard's house in Jena, Louisiana where plaintiff planned on spending what was left of the night. Pritchard went to bed but plaintiff and Love stayed up talking and drinking. At some point that night, they moved plaintiff's car, which was parked at Pritchard's house, and parked it behind a doctor's office in town. Plaintiff claims that her memory of the evening is vague and she stated that she could not recall the reason she moved her car, but one can easily assume the reason was because she did not want her husband to know that she was with Love. Pritchard woke up around 6:00 or 6:30 that morning, got out of her bed, and saw that plaintiff and Love were still up and awake. Shortly thereafter, plaintiff and Love retired together to Pritchard's bedroom at the rear of the house.
Carl, plaintiff's husband at the time (they have since divorced), was not fooled by the "old car at the doctor's office routine". He found out that plaintiff was at Pritchard's house with another man. That morning, Carl visited Wayne McGuffie, the Sheriff of LaSalle Parish, and requested that Sheriff McGuffie go with him to Pritchard's house because he needed someone to be a witness to his wife's conduct, as evidence for a divorce. Sheriff McGuffie refused Carl's request. Determined to get evidence against his wife, Carl visited Ronnie Burgess, a patrolman for defendant and a personal friend of his who was off duty and working at the Western Auto store at the time. Carl offered Burgess $500.00 to go with him to take pictures of his wife at Pritchard's house. Burgess refused. Shortly thereafter, Burgess called the defendant's Chief of Police, George King, told him what Carl had offered, and asked Chief King to come down to the Western Auto store. Chief King complied with the request and told Burgess that he had acted correctly in refusing Carl's offer. As Chief King was driving out of the Western Auto parking lot, Carl drove up beside his vehicle. Carl asked Chief King if he could help him get his wife out of Pritchard's house, but Chief King told Carl that he could not go into the house without a warrant. Chief King stated that Carl appeared to be pretty upset at the time, and he drove off stating that he would take care of it himself, one way or the other. Concerned about what Carl might do, Chief King picked up Burgess to ride with him to Pritchard's house to avert any possible *980 trouble. When they arrived at Pritchard's house, they got out of their car and walked around but did not see Carl or his vehicle. Everything was quiet around the house so they decided to leave. As they drove to a bank parking lot, about a block or two away from Pritchard's house, they saw Carl's vehicle pass by, headed toward Pritchard's house. They turned around and followed Carl's vehicle. When they arrived at the house, they saw Carl on the front porch attempting to open the front door. Chief King got out of the car and called to Carl to stop. Carl jumped off the porch and ran around to the side of the house. Chief King started after him, then stopped and turned around to direct Burgess back to his vehicle to call for a backup. Chief King then heard a window break and went to the front door, which Pritchard was then opening, to enter to stop Carl from entering the house or, if he had entered, to get Carl out of the house. In the meantime, Carl had broken a side window, entered the house and confronted plaintiff and Love together naked in Pritchard's bed with shocked looks on their faces. Carl shot plaintiff once in her left buttock and shot Love once in the right buttock. A second shot missed Love's groin and struck him in the right upper leg. When Chief King entered the house through the front door, he heard the shots, went into the bedroom, and arrested Carl.
Plaintiff contends that but for the policeman's failure to warn the occupants of Pritchard's house and failure to stop Carl from entering the house, her injuries would not have occurred. She further contends that defendant, through its policemen, breached a duty owed to her individually. As a result of Carl's actions, plaintiff claims that she has been the subject of ridicule, the "butt" of all jokes, has lost her self-esteem, gained weight, and her reputation and buttock have been permanently scarred.

LAW
Plaintiff's first specification of error is that the trial court failed to properly apply the duty-risk analysis to the facts of this case. Plaintiff argues that, if the duty-risk analysis was properly applied, this court must find that defendant, acting through its police department, was negligent. In response, defendant asserts that they owed a duty only to the general public and no special duty to plaintiff individually. The defendant further argues that, absent any special duty to plaintiff, she cannot recover from it in negligence.
To assert a cause of action in negligence, one must allege that a duty existed, that a breach of this duty occurred, and that damages were sustained as a result of the breach of the duty owed. Pitre v. Opelousas General Hosp., 530 So.2d 1151 (La.1988); Zeagler v. Town of Jena, supra. Negligent conduct is a causative fact of harm to another if it was a substantial factor in bringing about that harm. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). In order to find negligence on the part of defendant, we must first establish whether or not defendant owed a duty to protect plaintiff from the type of harm she suffered.
The duty of members of the police department has been established jurisprudentially and is essentially that of "maintaining peace and order, preventing and detecting crime, and enforcing the law...". Tezeno v. Maryland Casualty Company, 166 So.2d 351 (La.App. 3 Cir.1964); Smith on Behalf of Smith v. City of Kenner, 428 So.2d 1171 (La.App. 5 Cir.1983). This duty is one owed to the public generally but may be transformed into a duty owed to an individual where a personal or individual relationship (one-to-one relationship) arises between the police officer and an individual through closeness in proximity or time. Kendrick v. City of Lake Charles, 500 So.2d 866 (La.App. 1 Cir. 1986). This distinction between a policeman's duty to the general public and his duty to a specific individual was clearly set forth in Tompkins v. Kenner Police Dept., 402 So.2d 276 (La.App. 4 Cir.1981), as follows:
"[A] local government cannot be held liable in cases of failure to enforce a *981 protective regulation when the injuries resulting therefrom are not readily foreseeable and a substantial time passes between the negligent actions and the injuries sustained by plaintiff. However, in enforcement of a governmental regulation which, through closeness in proximity or time, results in a one-to-one relationship between the police officer and the injured party, the police officer ceases to act only for the public good and at that moment becomes obligated to the individual to conduct himself in such a way as not to cause him unnecessary injury." Tompkins v. Kenner Police Dept., 402 So.2d 276, at page 280 (La. App. 4 Cir.1981).
The Louisiana Supreme Court carefully examined the "public duty doctrine" in the case of Stewart v. Schmieder, 386 So.2d 1351 (La.1980). In that case, the Court defined the "public duty doctrine", citing Cooley On Torts, by saying:
"[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. `The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance.'" Stewart v. Schmieder, 386 So.2d 1351, at page 1357 (La.1980), quoting Cooley On Torts, 4th Ed. § 300 at page 385.
The Court noted that this doctrine has come under considerable attack in recent years. The Court seemed to question the validity of the "public duty doctrine" by listing instances in which it held governmental entities or public officials liable "for the breach of duties which, at first blush, appear to be owed to the public rather than any individual." Id. at 1357. Some examples noted by the Court were the maintenance of state and local highways, the incarceration of criminals and the issuance of building permits.
Nevertheless, the Court did affirm the continuing validity of the "public duty doctrine" in Louisiana. The Court approved an important exception to the "public duty doctrine" which is that "liability can be founded upon the violation of a duty that would be generally considered to be owed to the public, if the statute or ordinance setting forth the duty indicates, by its language, that the duty is designed to protect a particular class of individuals." Id. at 1358.
In Stewart, the Court held the City of Baton Rouge and the Parish of East Baton Rouge liable for breaching its "special duty" to examine plans for proposed construction projects and thereby causing the death and injuries of workmen at the site. Id. at 1358. The court concluded that "the mere fact that a duty is of a public nature, and benefits the general public, does not require a conclusion that the city cannot be found liable for the breach of that duty." Id. at 1358.
Applying these legal principles, the defendant in this case is not liable to plaintiff unless (1) the policeman's general duty to the public was transformed into a duty owed to the plaintiff personally, due to the establishment of a one-to-one relationship through closeness in proximity or time, Kendrick v. City of Lake Charles, supra; Tompkins v. Kenner Police Dept., supra, or (2) a statute or ordinance setting forth the duty, which is generally owed to the public, "indicates, by its language, that the duty is designed to protect a particular class of individuals." Stewart v. Schmieder, supra.
In Tompkins, supra, the officer on the scene of a motorcycle accident was asked by one injured to attend to another injured person who had been thrown into a field of weeds on the side of the road and hidden from sight. The officer saw no one else and failed to follow up on this request. *982 The injured person in the field died as a result. The court held, in that case, that a one-to-one relationship had been created and the officer owed a duty to that individual.
In Kendrick, supra, the police department, after arresting the driver of a vehicle for driving under the influence of alcohol, allowed the driver to be bonded out of jail and regain possession of her vehicle and drive it while still intoxicated. As a result, the driver was subsequently involved in a serious accident which resulted in her death. The Court held that a one-to-one relationship was established and that the police department owed an individual duty to the driver to prevent her regaining access to and operating her vehicle while still intoxicated.
In the instant case, there was no individual or one-to-one relationship established between the police officers and the injured plaintiff.
The case at bar is distinguishable from cases such as Tompkins and Kendrick. In those cases, there was the closeness in proximity and time necessary to establish a one-to-one relationship between the police and the plaintiff. In the case at bar, however, the sufficient closeness in proximity and time does not exist. In Tompkins, an accident had occurred and the policeman at the scene was told that there was another injured party that had been thrown off the motorcycle, yet the policeman failed to discover the victim. In Kendrick, the police let the plaintiff regain possession of her vehicle while she was still intoxicated. In the case at bar, however, plaintiff had no prior contact with the police, and Carl's contact with the police did not indicate that plaintiff was in immediate danger. There is no evidence in the record that indicates that the police knew it was likely that Carl was going to break through a window and enter a house and shoot plaintiff and Love or that plaintiff was in a present danger if the police did not act, such as the situation of the victim in Tompkins.
In the case at bar, there is no statute or ordinance which suggests by its language that the general public duty of the policeman was designed to protect a particular class of individuals into which plaintiff falls.
In Thomas v. State, 545 So.2d 632 (La. App. 4 Cir.1989), the Fourth Circuit rejected the public duty doctrine defense and held that certain individuals had a cause of action against the City and State. In that case, the plaintiffs alleged negligence on the part of Charity Hospital for violation of hospital policy which required that the City Police Department be notified when a patient is admitted to the hospital with a gunshot wound. Plaintiffs further alleged that the New Orleans Police Department was negligent because an officer who was assigned to monitor the emergency room at the hospital was absent from his post. The patient with the gunshot wound was an alleged murderer and attempted armed robbery suspect. When he was released from the hospital, he allegedly killed one of the plaintiffs' husbands and the other plaintiff's son. The court held that the public duty doctrine was not a viable defense in that case stating that these individuals had a right to seek damages as a result of a breach of the duties imposed upon the City and the State by the hospital policy.
In Stewart v. Schmieder, supra, the Louisiana Supreme Court held a City-Parish liable when a building collapsed due to defective design. The Court noted that the City violated its building code and held that:
"It is plain from the language that the building official, in addition to his general enforcement duties, was charged with a special duty to see that the construction of buildings was carried out safelya special duty in favor of those injured by accidents occurring during construction, such as the workmen who were injured in this case." Stewart v. Schmieder, 386 So.2d 1351, at page 1358 (La.1980).
In the present case, there is no policy, ordinance, or statute creating any "special duty" that the police owed plaintiff.
Nevertheless, at some point in time under the facts in this case, the policeman *983 did incur a duty. This occurred when the officers saw Carl trying to get into Pritchard's house through the front door. The police, however, did respond to this action of Carl. One officer yelled for Carl to stop, then began chasing him around the corner of the house. The officer stopped, called to the other officer to get assistance, and then decided to try to get in Pritchard's house through the front door which was being opened. Once Carl attempted to enter Pritchard's house, the police acted reasonably to apprehend Carl and to protect the occupants of the house.
Plaintiff asserts that the police should have arrested Carl before he was able to break into the house by continuing to chase him, and that the police's failure to do so constituted negligence. The police in this situation were faced with making split-second decisions. We find that they acted reasonably in performing their duty.
We will not discuss plaintiff's other assignments of error since we have found that the trial court was correct in holding that defendant, through its policemen, was not negligent in this situation.
In brief, counsel for defendant prays that penalties be assessed against plaintiff for a frivolous appeal. In order to demand damages for a frivolous appeal, an appellee must either raise the issue in an independent appeal or in answer to appellant's appeal. La.C.C.P.Art. 2133; Olivier v. Comeaux, 498 So.2d 1135 (La.App. 3 Cir.1986). Defendant has not filed an independent appeal raising this issue and has not asked for these penalties in an answer to the appeal. Therefore, penalties cannot be considered by this court.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed against plaintiff-appellant.
AFFIRMED.