VICTORIA BINIEWSKI, as Administratrix of the Estate of WILLIAM J. BINIEWSKI, Deceased, Appellant, *v.* CITY OF NEW YORK, Respondent.

First Department, November 12, 1943.

*Benjamin H. Siff* of counsel (*Martin Gottlieb,* attorney), for appellant.

*Joseph F. Mulqueen, Jr.,* of counsel (*James Hall Prothero* with him on the brief; *Ignatius M. Wilkinson, Corporation Counsel,* attorney), for respondent.

CALLAHAN, J. Shortly after midnight on July 31, 1941, William J. Biniewski, plaintiff's intestate, while intoxicated, was sleeping on a maintenance box located on the southbound platform of the One Hundred and Eightieth Street and Morris Park Avenue station of the municipal subway system operated by the defendant. The railroad structure and the station platform are elevated above the street at that point.

In defendant's employ as a special officer was one Benjamin Mistofsky who, with some difficulty, aroused Biniewski and attempted to " walk him " off the platform. Biniewski resisted and, in the course of the fracas that ensued, struck Mistofsky, rendering him temporarily unconscious. On regaining consciousness, he was told that Biniewski had fled to the street. When Mistofsky reached the street, he saw Biniewski about 100 yards away. He pursued him and was about to apprehend him when Biniewski began to run. Mistofsky drew his gun

and fired a shot into the air, whereupon Biniewski stopped and submitted to arrest. Later, while Mistofsky was returning with him towards the station, Biniewski again fled, and refused to halt when called upon to do so. Mistofsky then fired a shot which struck and killed Biniewski.

The evidence disclosed that Mistofsky was appointed from a competitive civil service list as a special patrolman for the Board of Transportation of the City of New York, the department which has charge of the operation of the subway. He was not a regular police officer of the City, but had been appointed and sworn in as a special patrolman by the police commissioner pursuant to the provisions of section 434a-7.0 of the Administrative Code of the City of New York (L. 1937, ch. 929). That section permits the commissioner, whenever expedient, on the application of any corporation showing the necessity therefor, to appoint special patrolmen to do special duty at any place in the city, the corporation employing them to be liable for their compensation. Such special patrolmen are subject to the orders of the police commissioner, and are required to obey the rules and regulations of the Police Department. During the term of their appointment, they possess all the powers and duties of the police force applicable to regular patrolmen.

There was testimony in the record to the effect that Mistofsky's duties included general police duty to maintain peace and make arrests where necessary. His jurisdiction was confined to the property where he was employed, except in unusual cases where he was required to go off the property because of some request by some person, or because of some situation which he " would deem necessary for police attention."

The revolver with which Mistofsky was armed was furnished him by the Board of Transportation, a department of defendant.

The trial court, in dismissing the complaint, held that what Mistofsky did was in his capacity as a special patrolman, or police officer, and, therefore, the defendant was protected by the cloak of governmental immunity. It held that, in any event, Mistofsky had ceased to act within the scope of his employment at the time when he pursued Biniewski to the street, and 100 yards from the railroad station.

We deem that, under the circumstances revealed by the evidence, the case presented an issue for the jury.

The defendant, in operating the subway system, acted in its proprietary capacity and not as a sovereign. (*Matter of Rapid Transit R. R. Comrs.*, 197 N. Y. 81, 96.) Therefore, defendant's

claim of immunity cannot be upheld here, unless it would be upheld under like circumstances on behalf of a private railroad corporation employing Mistofsky. If any immunity exists, it arises not because defendant is a municipal corporation, but because of Mistofsky's status as a special police officer. There is really, therefore, but one question presented, and that is whether we can say as a matter of law that Mistofsky at the time he fired the fatal shot was acting solely as a police officer in the execution of a public function.

The line of demarcation denoting where private employment ceases and that of a public nature commenced is not clearly defined in occurrences of the present nature when participated in by one who is a private employee clothed with police powers. (See *Woodhull* v. *Mayor, etc.,* 150 N. Y. 450; *Sharp* v. *Erie R. R. Co.,* 184 N. Y. 100; *Tyson* v. *Bauland Co.,* 186 N. Y. 397; *Samuel* v. *Wanamaker,* 107 App. Div. 433, and *Kastner* v. *Long Island R. R. Co.,* 76 App. Div. 323.) If there can be said to be a controlling factor, it would appear from an examination of the authorities to be whether the duty which the officer was performing at the time was for the peculiar benefit of the corporation in its local or special interest or one for the benefit of the public generally. The rule would further appear to be that where the transactions are of a continuing nature, commencing in the field of private employment, it is ordinarily a question of fact for the jury as to whether such employment has ceased at the time the particular event occurs upon which liability is sought to be placed.

In *Woodhull* v. *Mayor, etc. (supra)* the question presented concerned the liability of an employee for false arrest. There the employee had been appointed a special officer pursuant to statute by the board of trustees of the Brooklyn Bridge. The purpose of the statute was to provide a police force, with officers whose duties were to be of a public character, to be attached to the Brooklyn Bridge for the protection of the people, and the execution of the laws of the State. The plaintiff who sought recovery in that case was a passenger on a train crossing the bridge, and the altercation preceding his arrest commenced when the police officer closed a car door against his person. That occurrence was followed by an alleged assault on the officer. Thereafter the officer followed the plaintiff into the car, where he had taken a seat, and arrested him for the assault. The officer, therefore, in making the arrest was in no way attempting to protect the railroad property.

In *Sharp* v. *Erie R. R. Co. (supra)* the railroad employed

one who had been designated as a special deputy sheriff to guard and protect railroad property. This employee pursued a trespassing boy from the railroad right of way into adjacent land. This was done in the course of an attempt to free railroad property from trespassers, a duty included in the officer's private employment. It was not until the boy and the pursuing officer had entered an adjacent field that the officer drew his pistol and shot and killed the fleeing boy. The Court of Appeals held that the question as to whether at the time the special officer had fired the fatal shot he had put off his cloak as a servant of the defendant and put on the different character of a public officer was an issue for the jury. It stated that it was obvious that under circumstances where the transaction was one of a continuing nature there was no rule or principle of law to determine such an issue, and, hence, it belonged to the jury.

In *Tyson* v. *Bauland Co.* (*supra*) the action was for false arrest, brought against a storekeeper who had employed a special officer. A customer of the store had complained of the loss of a bag, and had been advised by the officer to notify him if she saw anyone carrying the bag. The customer observed the bag in the possession of another woman and conveyed this information to the officer, who arrested the second woman. The Court of Appeals said that the act done by the officer was not one in the protection of the master's property, nor in the discharge of the master's duty to maintain peace and order on the premises, but solely a matter arising on the personal complaint of the customer whose property had been stolen and to whom the storekeeper owed no duty. It, accordingly, held that it was reversible error for the trial court to refuse to charge the jury that the storekeeper was not liable for an act of the special officer performed in his capacity as a policeman. It ordered a new trial, saying that the jury might have found that the officer in making the arrest acted as a policeman and the storekeeper was entitled, in such event, to be freed from liability.

In *Samuel* v. *Wanamaker* (*supra*), where an employer was held not liable, the action was for false arrest by a special officer hired by a department store. Though the arrest was initiated by the alleged theft of store property, the evidence showed that defendant's representatives counseled against the arrest.

In *Kastner* v. *Long Island R. R. Co.* (*supra*) the special officer in the employ of defendant railroad pursued one alleged

to be taking railroad property, several blocks from the railroad. The company was held liable for his actions.

In the present case, Mistofsky clearly was endeavoring to protect defendant in walking Biniewski off the station. The act of Biniewski for which the officer decided to arrest him occurred in connection with that endeavor. That the consummation of the arrest required Mistofsky to leave the railroad property would not, as a matter of law, constitute an abandonment of his employment. (*Sharp* v. *Erie R. R. Co., supra.*) That issue as to whether private employment had ceased would appear to be for the jury, especially when we consider that Mistofsky was authorized to go off the railroad property under circumstances which he deemed justified that procedure.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

UNTERMYER, DORE and COHN, JJ., concur; TOWNLEY, J., dissents and votes to affirm.

Judgment reversed. and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice.