Breitel, J.
This appeal presents, in a very sympathetic framework, the issue of the liability of a municipality for failure to provide special protection to a member of the public who was repeatedly threatened with personal harm and eventually suffered dire personal injuries for lack of such protection. The facts are amply described in the dissenting opinion and no useful purpose would be served by repetition. The issue arises upon the affirmance by a divided Appellate Division of a dismissal of the complaint, after both sides had rested but before submission to the jury.
It is necessary immediately to distinguish those liabilities attendant upon governmental activities which have displaced or supplemented traditionally private enterprises, such as are involved in the operation of rapid transit systems, hospitals, and places of public assembly. Once sovereign immunity was abolished by statute the extension of liability on ordinary principles of tort law logically followed. To be equally distinguished are certain activities of government which provide services and facilities for the use of the public, such as highways, public buildings and the like, in the performance of which the municipality or the State may be liable under ordinary principles of tort law. The ground for liability is the provision of the services or facilities for the direct use by members of the public.
In contrast, this case involves the provision of a governmental service to protect the public generally from external hazards and particularly to control the activities of criminal wrongdoers. (See, e.g., Messineo v. City of Amsterdam, 17 N Y 2d 523; Motyka v. City of Amsterdam, 15 N Y 2d 134,138-139; Steitz v. City of Beacon, 295 N. Y. 51, 56; 18 McQuillin, Municipal Corporations [3d ed.], §§ 53.79-53.80.) The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to *582 how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits. This is quite different from the predictable allocation of resources and liabilities when public hospitals, rapid transit systems, or even highways are provided.
Before such extension of responsibilities should be dictated by the indirect imposition of tort liabilities, there should be a legislative determination that that should be the scope of public responsibility (Van Alystyne, Governmental Tort Liability, 10 U. C. L. A. L. Rev. 463, 467; Note, 60 Mich. L. Rev. 379, 382).
It is notable that the removal of sovereign immunity for tort liability was accomplished after legislative enactment and not by any judicial arrogation of power (Court of Claims Act, § 8). It is equally notable that for many years, since as far back as 1909 in this State, there was by statute municipal liability for losses sustained as a result of riot (General Municipal Law, § 71). Yet even this class of liability has for some years been suspended by legislative action (New York State Defense Emergency Act [L. 1951, ch. 784, § 113, subd. 3; § 121, as last amd. by L. 1968, ch. 115]), a factor of considerable significance.
When one considers the greatly increased amount of crime committed throughout the cities, but especially in certain portions of them, with a repetitive and predictable pattern, it is easy to see the consequences of fixing municipal liability upon a showing of probable need for and request for protection. To be sure these are grave problems at the present time, exciting high priority activity on the part of the national, State and local governments, to which the answers are neither simple, known, or presently within reasonable controls. To foist a presumed cure for these problems by judicial innovation of a new kind of liability in tort would be foolhardy indeed and an assumption of judicial wisdom and power not possessed by the courts.
Nor is the analysis progressed by the analogy to compensation for losses sustained. It is instructive that the Crime Victims Compensation and “ Good Samaritan ” statutes, compensating limited classes of victims of crime, were enacted only after the *583 most careful study of conditions and the impact of such a scheme upon governmental operations and the public fisc (Executive Law, art. 22, § 620 et seq. [L. 1966, ch. 894]; Administrative Code of City of New York, ch. 3, tit. A, § 67-3.2). And then the limitations were particular and narrow.
For all of these reasons, there is no warrant in judicial tradition or in the proper allocation of the powers of government for the courts, in the absence of legislation, to carve out an area of tort liability for police protection to members of the public. Quite distinguishable, of course, is the situation where the police authorities undertake responsibilities to particular members of the public and expose them, without adequate protection, to the risks which then materialize into actual losses (Schuster v. City of New York, 5 N Y 2d 75).
Accordingly, the order of the Appellate Division affirming the judgment of dismissal should be affirmed.