OPINION OF THE COURT
 

 Meyer, J.
 

 The New York City Transit Authority owes no duty to protect a person on its premises from assault by a third person, absent facts establishing a special relationship between the authority and the person assaulted. That a
 
 *179
 
 nongovernmental common carrier would be liable under " the same factual circumstances is not determinative of the authority’s liability. Its immunity from such liability rests upon the same considerations as does the immunity of a municipality or other governmental body from liability for failure to provide adequate police protection, for the duty if one were recognized would necessarily implicate the Transit Authority police. Accordingly, the order of the Appellate Division, First Department, in the Weiner case should be reversed, and the. order of the Appellate Division, Second Department, in the Shernov case should be affirmed, though on a rationale different from that of the Appellate Division.
 

 In the Weiner case the authority
 
 [1]
 
 moved for summary judgment. The papers on the motion establish that plaintiff entered the 25th Street end of the 23rd Street station of the Eighth Avenue subway at about 12:15 p.m. on December 4, 1973. There is a change booth at the 25th Street entrance but a sign at street level states that there is a clerk in the booth only between the hours of 2:55 p.m. and 7:30 p.m., and that anyone without a token must use the 23rd Street entrance at which a clerk is in attendance full time. Plaintiff proceeded from the street to the token booth level, paid her fare with a token and had begun to descend to the train level when she was accosted on the steps by a man who blocked her way. There was no one else on the stairway. The man slashed at her handbag with a knife, cutting through its strap, but at the same time cutting her wrist. Complaint reports of the transit police establish that during the period January 13 through October 23, 1973 13 separate incidents of robbery or assault occurred, 9 of them at the 25th Street end of the station when the token booth was plosed and 8 of them at knifepoint.
 

 Trial Term granted the authority’s motion and dismissed the complaint. The Appellate Division, however, reversed as to the Transit Authority, holding that its knowledge of the prior incidents while the entrance was unmanned
 
 *180
 
 presented a triable issue of fact as to negligence. The Transit Authority appeals on a certified question.
 

 The Shernov case involved an assault upon and attempted rape of plaintiff in the New Utrecht Avenue station of the Sea Beach line. It too included evidence of prior such assaults, some in the same station and some elsewhere on the line. The psychological impact on plaintiff was sufficiently great that the case did not come to trial until almost 16 years after the incident. A Civil Court jury awarded plaintiff a $50,000 verdict, which was, however, reversed by the Appellate Term on the ground that the Transit Authority had no legal duty to protect its passengers from crime. The Appellate Division disagreed with respect to duty, but nonetheless affirmed on the ground that plaintiff’s evidence was insufficient to establish proximate cause. The appeal to us is on a question certified by the Appellate Division.
 

 In each case the plaintiff argues that the Transit Authority is engaged in a proprietary function and subject to the same liability to protect its passengers from assault as is any common carrier
 
 (Green Bus Lines v Ocean Acc. & Guar. Corp.,
 
 287 NY 309, 312; see
 
 Gillespie v Brooklyn Hgts. R.R. Co.,
 
 178 NY 347; 1 NY PJI2d 419) or as is the owner of real property who is aware of criminal acts that have occurred on his premises
 
 (Nallan v Helmsley-Spear, Inc.,
 
 50 NY2d 507). The Transit Authority on the other hand contends that it performs a governmental function and is not under any greater duty to provide police protection than is any other municipality
 
 (Riss v City of New York,
 
 22 NY2d 579;
 
 Bass v City of New York,
 
 38 AD2d 407, affd 32 NY2d 894; see
 
 Garrett v Town of Greece,
 
 55 NY2d 774; Ann., 46 ALR3d 1084), and, therefore, absent a special relationship
 
 [2]
 
 such as existed in
 
 Florence v Goldberg
 
 (44 NY2d 189) and
 
 Schuster v City of New York
 
 (5 NY2d 75), cannot be held liable. The issue is one on which we have not passed (cf.
 
 Scalise v City of New York,
 
 3 NY2d 951), but on which, in addition to the two cases now under consideration, the lower courts have spoken a number of times
 
 (Bardavid v New York City Tr. Auth.,
 
 82 AD2d 776;
 
 Amoruso v New York City Tr. Auth.,
 
 12 AD2d 11;
 
 Biniewski v
 
 
 *181
 

 City of New York,
 
 267 App Div 108;
 
 Prinz v City of New York,
 
 98 Misc 2d 952;
 
 Eisman v Port Auth. Trans Hudson Corp.,
 
 96 Misc 2d 678; see
 
 Moriarity v New York City Tr. Auth.,
 
 11 AD2d 654;
 
 Langer v City of New York,
 
 9 Misc 2d 1002, affd 8 AD2d 709). We hold that there is no duty such as plaintiffs in these cases seek to enforce.
 

 The Legislature has declared in subdivision 2 of section 1202 of the Public Authorities Law that the authority “shall be regarded as performing a governmental function in carrying out its corporate purpose and in exercising the powers granted by this title” and has authorized the authority to maintain a transit police force (Public Authorities Law, § 1204, subd 16) whose members are designated “police officers” for purposes of the Criminal Procedure Law (§ 1.20, subd 34, par [e]) and whose powers and duties as defined in section 1204, though geographically limited, are otherwise quite as broad as those of a municipal police officer. It has also in section 1212 of the Public Authorities Law decreed that the authority is responsible for the negligence of its employees in the operation of the subway system. However, nothing in the latter provision or in section 8 of the Court of Claims Act suggests any intention to abrogate with respect to the authority the rule, recognized in
 
 Riss v City of New York
 
 (22 NY2d 579, supra) that the allocation of police resources to protection from criminal wrongdoing is a legislative-executive decision for which there is no liability.
 

 As
 
 Riss
 
 makes clear, before liability should be imposed in such a case “there should be a legislative determination that that should be the scope of public responsibility” (22 NY2d 579, 582). Were the issue simply one of a duty to provide police protection, therefore, there would be no question that no duty was owed plaintiffs. It is, however, complicated by the facts that the police department is part of the authority operating the subways, that a private property owner owes a duty of such protection though it has no police force, and that a privately owned common carrier operating a railway system such as does the authority can have designated employees appointed as policemen with the same powers that a city or village policeman has (Railroad Law, § 88).
 

 
 *182
 
 None of those factors is controlling. It is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred
 
 (Bass v City of New York,
 
 32 NY2d 894,
 
 supra; Woodhull v Mayor,
 
 150 NY 450, 453;
 
 Pianka v State,
 
 46 Cal 2d 208;
 
 Guidi v State,
 
 41 Cal 2d 623;
 
 Rhodes v City of Palo Alto,
 
 100 Cal App 2d 336;
 
 City of Macon v Powell,
 
 133 Ga App 907; see
 
 Herilla v Mayor & City Council of Baltimore,
 
 37 Md App 481;
 
 Crouch v Hall,
 
 406 NE2d 303 [Ind App]).
 

 The activities for which it is sought to hold the authority in the cases under consideration involve or grow directly out of the failure to allocate police resources — the absence of police surveillance at the entrance and the failure to warn of criminal activity in the area or close the entrance when police protection was not available. That the police and the common carrier activity (otherwise proprietary) are vested in the same entity will not lessen the crushing nature of the burden that would otherwise be imposed
 
 (Steitz v City of Beacon,
 
 295 NY 51, 55) nor interfere less with the legislative-executive decision how to utilize such resources (see
 
 Riss v City of New York,
 
 22 NY2d 579,
 
 supra).
 
 Nor should the fact that other carriers may have employees designated as policemen change the responsibility of the authority, for the allocation of such a carrier’s police resources involves no interference by the judiciary with the legislative-executive decision made by the authority (see
 
 Motyka v City of Amsterdam,
 
 15 NY2d 134, 138; cf.
 
 Woodhull v Mayor,
 
 150 NY 450,
 
 supra; Biniewski v City of New York,
 
 267 App Div 108,
 
 supra).
 

 Accordingly, in the Weiner case the order of the Appellate Division should be reversed, with costs, and the question certified answered in the negative, and in the Shernov case the order of the Appellate Division should be affirmed, with costs, and the question certified answered in the affirmative.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Fuchsberg taking no part.
 

 
 *183
 
 In
 
 Weiner v Metropolitan Transp. Auth.:
 
 Order reversed, with costs, and the complaint dismissed as against defendant New York City Transit Authority. Question certified answered in the negative.
 

 In
 
 Shernov v New York City Tr. Auth.:
 
 Order affirmed, with costs. Question certified answered in the affirmative.
 

 [1]
 

 . The action was begun against both the Metropolitan Transit Authority and the New York City Transit Authority. The Appellate Division affirmed so much of Trial Term’s order as dismissed the action against MTA, plaintiff having conceded that MTA neither operated nor controlled any transit facility. MTA, therefore, is no longer in the case.
 

 [2]
 

 . No
 
 such relationship is claimed in either of the cases under consideration.