Simons, J.
(dissenting). I cannot agree with the majority’s conclusion that plaintiff’s verdict rests upon a finding that the school district breached a governmental duty. While plaintiff alleged that defendant breached both governmental and proprietary duties to him, the court submitted to the jury solely the question of whether defendant breached a proprietary duty in failing to properly maintain the lock on the playground gate. The majority’s analysis of governmental functions and special duty is not pertinent. Since the school district’s duty to maintain the playground gate was proprietary in nature, under Miller v State of New York (62 NY2d 506) plaintiff did not have to prove that the school district owed him a special duty to recover for its negligence (see, Cuffy v City of New York, 69 NY2d 255, 260-261). Accordingly, I would affirm the order of the Appellate Division. I write at some length because I believe that the majority, in reversing that order, has clouded the rules governing cases of this type and has cast serious doubt on the continuing validity of Miller v State of New York (supra).
Under settled principles, providing security to public school teachers against criminal acts by third parties is a governmental function; the plaintiff is required to plead and prove the existence of a special duty owed to him by school authorities before the school may be liable for negligence (Vitale v City of New York, 60 NY2d 861; Glick v City of New York, 42 NY2d 831, affg 53 AD2d 528). The rule is no more than the logical extension of the principle that a municipality may not be held liable for injuries resulting from the failure to provide *934 police protection (Cuffy v City of New York, supra, at 260; Sorichetti v City of New York, 65 NY2d 461, 468; Riss v City of New York, 22 NY2d 579). It rests on a judicial recognition that a municipality’s provision of security to the public is a matter of allocating limited public resources and is better left to the discretion of the other two branches of government (see, Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 181; Riss v City of New York, supra; Motyka v City of Amsterdam, 15 NY2d 134, 138).
Conversely, when the government acts in a proprietary capacity, as a landowner or landlord, it is subject to the same principles of tort law as a private individual; liability for negligence may be found even absent the existence of a special duty (Miller v State of New York, 62 NY2d 506, supra; Preston v State of New York, 59 NY2d 997; Court of Claims Act § 8). Although governments have always had that duty, formerly claims against them were barred by the doctrine of sovereign immunity and could not be enforced (see, Schuster v City of New York, 5 NY2d 75, 83; Bernadine v City of New York, 294 NY 361). Since the State’s waiver of sovereign immunity, however, the doctrine no longer forecloses liability for breach of a proprietary duty.
Concededly, it is difficult to draw the line between claims resting upon a breach of a proprietary duty and those resting upon a governmental duty. A governmental entity’s conduct, as we said in Miller v State of New York (62 NY2d 506, 511-512, supra), "may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions. This begins with the simplest matters directly concerning a piece of property for which the entity acting as landlord has a certain duty of care, for example, the repair of steps or the maintenance of doors in an apartment building. The spectrum extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions, for example, the maintenance of general police and fire protection.” (Emphasis added.) In fixing the place on the continuum where any given conduct falls, "[i]t is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency is engaged generally in proprietary activity or is in control of the location in which the injury occurred” (Weiner v Metropolitan Transp. Auth., supra, at 182 *935 [emphasis added]; see also, Miller v State of New York, supra, at 513). Applying that standard, the conduct of which plaintiff complains constituted a breach of a proprietary duty. An analysis of the Weiner and Miller cases illustrates why.
In Weiner, the plaintiff was assaulted by an intruder while walking down the steps to the subway train level in a station owned and maintained by defendant authority. The plaintiff argued that the operation of a commuter railroad constituted a proprietary function and that liability for failure to provide adequate police protection at the train station could result absent the existence of a special duty (see, e.g., Nallan v Helmsley-Spear, Inc., 50 NY2d 507). The court rejected plaintiff’s contention and held that the specific omission alleged to be negligent — "the absence of police surveillance at the entrance and the failure to warn of criminal activity in the area or close the entrance when police protection was not available” — was not actionable, absent a special duty, because it required juries and courts to interfere with the legislative and executive decision how to utilize security resources (Weiner v Metropolitan Transp. Auth., supra, at 182, citing Riss v City of New York, 22 NY2d 579, supra).
In Miller, a State University student was raped in the basement of her on-campus dormitory by a nonstudent intruder. She sought to predicate liability upon the school’s negligent failure to provide adequate police protection and failure to lock the exterior dormitory doors. We held that plaintiff could recover on the latter theory because it involved a breach of the State’s proprietary duty as landlord rather than a breach of a governmental duty to provide security (62 NY2d, at 514 supra).
In this case, the trial court properly relied on Miller in denying the school district’s motion to dismiss. The one actionable claim proven — and the only theory of liability submitted to the jury — was that the school district was negligent in failing to repair the gate at 147th Street despite the Board’s knowledge that it was broken and that intruders had caused problems on the school premises in the past. The duty to maintain this gate so that it could be locked involved the same considerations as did the duty to lock the exterior dormitory doors in Miller. Imposing such a duty on defendant does not require the court or the jury to interfere with executive-legislative decisions of how to best allocate police or security resources and, manifestly, it does not impose a duty upon municipalities to post security guards at every school at *936 the risk of being exposed to crushing liability. The duty imposed is only to maintain premises, a duty which has always been imposed on property owners and on which liability against the State may rest, now that the State has waived immunity from suit.
It is particularly troublesome that in deciding against plaintiff the majority relies upon Glick v City of New York (42 NY2d 831, affg 53 AD2d 528, supra) and Vitale v City of New York (60 NY2d 861, supra) because under the Weiner-Miller analysis those cases are not on point. In Glick, the plaintiff, a female teacher, was assaulted by a male student in a woman’s bathroom at a public high school. The plaintiff alleged three theories of negligence: (1) failing to provide adequate supervision at the school, (2) permitting the student to remain at the school with knowledge of his dangerous propensities and (3) in failing to transfer the student to a different school. We affirmed dismissal of the complaint on the memorandum at the Appellate Division which concluded that liability could not be sustained absent proof that the school owed a special duty to the student. That case presented only a dispute on how to best adopt and implement a security plan and whether or not to dismiss or transfer a troublesome student. Those are governmental functions and the case is not a useful parallel to this case involving defendant’s failure to maintain the lock on a schoolyard gate.
Similarly, in Vitale, we dismissed the complaint of a teacher who was injured when he tried to break up an altercation between students in the hallway of a school. The claim of liability rested upon the school’s alleged failure to observe its own detailed security plan. Plaintiff did not contend that the defendant breached a proprietary duty; instead he conceded that the act of negligence was governmental in nature and attempted to establish that the school owed him a special duty (see, 60 NY2d, at 863, supra). We rejected that argument and held that "[njothing in the adoption or content of the [security] plan warrants a finding that it was designed or intended specifically for his benefit or that of other teachers in the school” (id.). Vitale is useful for determining whether or not a relationship between a plaintiff and a defendant can be considered "special”, but it offers no help in determining whether a specific act or omission is governmental or proprietary in nature and it certainly does not support the majority’s holding in this case in which the verdict rests on a failure to perform a proprietary duty.
*937 Finally, it should be clear that the finding of no liability in Glick and Vitale did not rest solely on the circumstances that they involved attacks by third parties on premises owned by a public school. It would be inaccurate to conclude that because the property was owned by the school district or because providing public education is governmental, liability cannot be sustained against defendant in the absence of a special duty. The Weiner and Miller decisions reject such an approach and hold that liability rests upon a consideration of the underlying purpose to be served by the special duty rule (see, Riss v City of New York, 22 NY2d 579, 582, 583, supra). Indeed, we recognized this in Crosland v New York City Tr. Auth. (68 NY2d 165, 169, n 3) by specifically disapproving Ammirati v New York City Tr. Auth. (117 Misc 2d 213, 217) which had failed to apply the Weiner test in that way.
Moreover, an affirmance here is consistent with the result in Marilyn S. v City of New York (73 NY2d 910 [decided today]). According to the plaintiff’s expert in that case, the establishment and management of the key control system at the high school was a critical aspect of the over-all security system of the school. Implementing such a system presents problems because regardless of how carefully the school attempts to control keys, extra ones will be distributed to substitute teachers or teachers who forget theirs, and others will be lost as teachers retire or are transferred. Given those circumstances, school officials must decide at what point it is cost effective and practical to avoid risk by requiring that the lock cylinders be changed and new keys issued. Such decisions are policy choices involving the, distribution of a limited amount of allocated resources and require the exercise of judgment and discretion in making the necessary tradeoffs with other or additional security measures. As such they differ completely from the landlord’s obligation to maintain premises and are properly considered governmental, not proprietary, activities for which the school district may not be liable absent a special duty.
The school district also contends that even if it had a proprietary duty to maintain the playground gate in a condition in which it could be locked, it should not be held liable because the New York City Building Code mandates that the school playground gates must be open at all times when the school building or schoolyard is occupied in order to provide an exit from the building and schoolyard to a public street (Administrative Code of City of New York former §§ C26-602.1 *938 —602.4 [now §§ 27-361 — 27-364]). Since it was unlawful for it to lock the gates, the school district contends it could not at the same time be under a duty to lock them to prevent outsiders from entering the schoolyard and injuring plaintiff. Thus, it urges the failure to maintain the gate in a condition in which it could be locked was not, as a matter of law, the proximate cause of plaintiff’s injuries (Sheehan v City of New York, 40 NY2d 496, 501; Saugerties Bank v Delaware & Hudson Co., 236 NY 425). Whatever the correct legal interpretation of the Building Code provisions, the school district acquiesced in the trial court’s decision to submit the interpretation and application of them to the jury as questions of fact. The jury found- against the school district and, having acquiesced in that procedure, it may not now urge that the court should have dismissed the action because, as a matter of law, the gate had to remain open (see, Martin v City of Cohoes, 37 NY2d 162, 165-166).
Accordingly, I dissent and vote to affirm.
Judges Kaye, Alexander, Hancock, Jr., and Bellacosa concur in memorandum; Judge Simons dissents and votes to affirm in an opinion in which Chief Judge Wachtler concurs; Judge Titone taking no part.
Order reversed, etc.