OPINION OF THE COURT
Martin Schoenfeld, J.
In this action plaintiff Linda Belle alleges that she was repeatedly stabbed by unknown assailants when she was trapped at the bottom of the stairway of an inoperable entrance to the New York City subway system. Plaintiff claims that a sign posted by defendant New York City Transit Authority (NYCTA) indicated that the entrance was open; that a swinging metal gate which could have blocked the entrance was open; but that the single turnstile for the entrance was locked, thus denying access to the subway platform and creating a cul-de-sac at the bottom of the stairs.
NYCTA and defendant Metropolitan Transit Authority (MTA) now move (1) pursuant to CPLR 3211, to dismiss the complaint for failure to state a cause of action or, alternatively, (2) pursuant to CPLR 3212, for summary judgment. (Plaintiffs claim against the City of New York was voluntarily discontinued pursuant to a stipulation dated June 11, 1992.) For the reasons set forth herein, the motion to dismiss is granted as regards MTA, and the motion to dismiss or for summary judgment is denied as regards NYCTA.
mta’s motion
"It is well settled, as a matter of law, that the functions of the MTA with respect to public transportation are limited to financing and planning, and do not include the operation, maintenance, and control of any facility.” (Cusick v Lutheran Med. Ctr., 105 AD2d 681 [2d Dept 1984].) Thus the MTA is entitled to dismissal of the complaint for failure to state a cause of action.
nycta’s motion

Motions to Dismiss and for Summary Judgment

"On a motion to dismiss a complaint we accept the facts *78 alleged as true * * * and determine simply whether the facts alleged fit within any cognizable legal theory.” (Morone v Morone, 50 NY2d 481, 484 [1980].) Furthermore, "a complaint should not be dismissed on pleadings so long as, giving plaintiff the benefit of every possible favorable inference contained in [his or her] allegations, a cause of action exists.” (Donnelly v Morace, 162 AD2d 247, 247-248 [1st Dept 1990].) Similarly, "summary judgment is a drastic remedy, the procedural equivalent of a trial * * * and should not be granted where triable issues of fact are raised * * * Issue finding, not issue determination, is the appropriate function of summary judgment.” (Epstein v Scally, 99 AD2d 713, 714 [1st Dept 1984].)

Plaintiff’s Allegations

Plaintiffs verified complaint — as amplified by her verified bill of particulars, the transcript of her General Municipal Law § 50-h examination, and the parties’ other submissions (including photographs of the scene) — describes a prototypical New York nightmare. However, this court must follow the law, not the dictates of sympathy, in determining whether there is any basis upon which to hold NYCTA liable for plaintiff’s injuries.
Plaintiff claims that at or about 12:45 p.m. on January 5, 1991 she descended the stairway of a subway entrance at the southwest corner of Eighth Avenue and 52nd Street in Manhattan. A sign above the entrance stated as follows:
"Entrance Open "Daily 4AM-10:25PM "Token required or "use entrance at 50 St.”
Furthermore, a metal gate located at the bottom of the stairs but visible from the sidewalk at street level was open. At the bottom of the stairway plaintiff found that ingress to the subway platform was blocked because the token receptacle of the sole wedge-style turnstile was locked. Plaintiff claims that NYCTA intentionally bolted the turnstile closed because the token slot was continually being "jammed” by vandals.
Plaintiff then noticed that two men (who may well have been waiting to find a victim in plaintiffs predicament) had descended the stairs. As plaintiff was returning towards the stairway, one of the men got in front of her and one got behind her. When plaintiff started to ascend the stairs to street level the man behind her grabbed her around the *79 throat, asked for her purse, and then began stabbing her head, face, neck, arms and hands with a knife. Her assailants then grabbed her handbag and escaped towards Ninth Avenue.
Unable to scream because of the stab wounds in her throat, plaintiff crawled up the stairway. She was aided by passersby and police and eventually taken to Bellevue Hospital by ambulance. Doctors counted 21 stab wounds and listed plaintiff in "critical but stable” condition. She was treated over the course of a 9-day stay and released on January 14th. Her various lingering, and perhaps permanent, injuries include loss of motion around her face, neck, and upper body; scarring; diminished vision and hearing; and emotional trauma.

Discussion

"[T]o establish a cause of action sounding in negligence, [a plaintiff] must meet the initial burden of showing (1) the existence of a duty flowing from defendant to plaintiff; (2) a breach of this duty; (3) a reasonably close causal connection between the contact and the resulting injury; and (4) actual loss, harm or damage.” (Febesh v Elcejay Inn Corp., 157 AD2d 102, 104 [1st Dept 1990].) The primary difficulty faced by plaintiffs alleging that they were assaulted by third parties due to the negligence of a municipality or a municipal surrogate (here, NYCTA) is establishing that the municipality owed them any duty.
One narrow amelioration of this difficulty is the "special duty” or "special relationship” doctrine, pursuant to which courts have found that due to a specific set of facts and circumstances a municipality "assumed” a duty to protect a particular person against assault by third persons. (See, e.g., Cuffy v City of New York, 69 NY2d 255, 260 [1987]): "The elements of this 'special relationship’ are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking.” In the instant case plaintiff asserts that the false sign and open gate created a "special relationship.” This court is dubious as to whether any of the elements of a "special relationship” are present here, and we find that element (3) is clearly lacking. Thus plaintiff may not rely on this theory to sustain her complaint.
*80 However, plaintiff claims that NYCTA breached the duty of care that a common carrier owes to its passengers, and that in this regard NYCTA was acting in a proprietary, rather than a governmental, capacity.
The Court of Appeals has expounded upon the dichotomy between proprietary and governmental functions in Miller v State of New York (62 NY2d 506, 511-512 [1984] [State liable for rape in unlocked university dormitory]) as follows: “A governmental entity’s conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions. This begins with the simplest matters directly concerning a piece of property for which the entity acting as landlord has a certain duty of care, for example, the repair of steps or the maintenance of doors in an apartment building. The spectrum extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions, for example, the maintenance of general police and fire protection.”
The proprietary-governmental dichotomy was addressed in the context of two companion suits claiming that NYCTA was liable for assaults by third persons in Weiner v Metropolitan Transp. Auth. and Shernov v New York City Tr. Auth. (55 NY2d 175, 182 [1982]): "It is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred.” The facts in Weiner are simple. The plaintiff descended into a subway entrance that had an entry sign correctly indicating that no clerk was in attendance at that time. She passed through a turnstile with a token and was descending a stairway to the subway platform when she was assaulted.
Plaintiff, in Weiner (supra), claimed that NYCTA was negligent in failing to protect or warn against assaults in an unguarded stairway with a history of such assaults. (In Shernov, supra, the facts are not clearly set forth, but it appears that there, too, the only claim of negligence was NYCTA’s failure to respond to evidence of prior assaults.) Thus, the Court stated that "[t]he activities for which it is sought to hold [NYCTA liable] in the cases under consideration involve or grow directly out of the failure to allocate police resources— *81 the absence of police surveillance at the entrance and the failure to warn of criminal activity in the area or close the entrance when police protection was not available.” (Supra, 55 NY2d, at 182.) The Court’s opening statement (at 178), that NYCTA "owes no duty to protect a person on its premises from assault by a third person, absent facts establishing a special relationship between the authority and the person assaulted,” simply presages the opinion’s main conclusion: that under State statutory and decisional law NYCTA is protected by the same "special duty” rule as is a municipality. The plaintiffs in Weiner and Shernov could not establish a special duty, and they had no other basis upon which to predicate NYCTA’s liability.
In the instant case, however, the entry sign was incorrect (distinguishing our situation from the one in Weiner, supra), and the open gate was misleading. The specific acts and omissions at issue are the act of knowingly locking the turnstile downstairs and the omissions of failing to lock the gate leading thereto and failing to change (or cover or remove) the entrance sign. We hold today that within the proprietary-governmental dichotomy, as enunciated in Miller (supra) and Weiner (and assuming the allegations of the verified complaint as true), this act and these omissions did not involve the allocation of police resources, and thus were not governmental in nature, but rather were proprietary in nature.
That "Weiner did not * * * absolve publicly owned common carriers from liability for assaults on their passengers by third parties in all cases” was made clear in Crosland v New York City Tr. Auth. (68 NY2d 165, 169 [1986] [NYCTA potentially liable for failure of employees to summon aid for passenger whom they knew was being viciously assaulted]).
"Public Authorities Law § 1202 (2), which provides in part that the [NYCTA], in carrying out its corporate purpose, 'shall be regarded as performing a governmental function’ * * * was not meant to abrogate the separate statutory provision that the [NYCTA] is responsible for the negligence of its employees in the operation of the subway system * * *
"Whether any act or failure to act of [an NYCTA] employee * * * can be the basis for an actionable claim against [NYCTA] depends upon whether it is within or without the boundaries of the policy-based governmental immunity established in Weiner” (Crosland v New York City Tr. Auth, supra, 68 NY2d, at 169-170).
*82 Since most subway assaults are not undertaken in plain view, Crosland (supra) left many plaintiffs unable to overcome the formidable barrier imposed by Weiner (supra). Their response has been, according to NYCTA, to bring a slew of "police protection suits masquerading as challenges to premises or appliance safety” — suits which the courts have firmly rejected. However this may be so, those cases which NYCTA cites to are fundamentally distinguishable from the instant case. In Bardavid v New York City Tr. Auth. (61 NY2d 986 [1984]), the entrance to the subway system was via a stairway which led to an alcove where elevators took patrons down to a lower level containing token booths and tracks. NYCTA had installed an electric sign that allowed patrons to wait at ground level until such time as their descent to the alcove would be met by a waiting elevator. On the day of the incident in question the sign was not working, and the plaintiff was assaulted in the alcove. In its memorandum opinion, which did not address any other issues, the Court found that the installation of the sign did not create a "special duty” towards plaintiff (and that in any event she could not have relied on a sign that she knew was not working). Since the opinion does not indicate why the sign was not working, it is not clear what plaintiff’s claim of negligence was. In any event, the sign’s sole purpose, in that case, was to assist in NYCTA’s police protection function, and, therefore, its presence or absence, functionality or nonfunctionality, could not be the basis for suit.
This court has considered all of the other cases propounded by NYCTA herein, including Rivera v New York City Tr. Auth. (184 AD2d 417 [1st Dept 1992] [assault in unlit passageway]); Khodai v New York City Tr. Auth. (176 AD2d 524 [1st Dept 1991] [assault on stairway]); Calero v New York City Tr. Auth. (168 AD2d 659 [2d Dept 1990] [assault on subway platform]); Farber v New York City Tr. Auth. (143 AD2d 112 [2d Dept 1988] [assault on subway platform]); Kaufman v New York City Tr. Auth. (NYJL, Sept. 1, 1983, at 11, col 1 [App Term, 2d Dept] [assault on subway platform]); In re Estate of Crichlow (NYJL, Feb. 5, 1991, at 22, col 6 [Sup Ct, NY County] [assault in control tower]); Ellen F. G. v City of New York (NYJL, Mar. 27, 1989, at 27, col 5 [Sup Ct, Queens County] [assault in municipal parking garage]), and finds them all to be readily distinguishable or simply inapposite. Most of these cases, such as Farber, fall squarely within the center of Weiner’s ambit (supra).
*83 Three recent decisions by Justice Edward Lehner of this court have provided further guidance in this area of the law. In Popplestone v New York City Tr. Auth. (NYJL, Mar. 6, 1990, at 22, col 5 [Sup Ct, NY County]), Judge Lehner denied a motion for summary judgment by the Transit Authority in a case where the plaintiff claimed she had been assaulted after passing through an unlocked, one-way, revolving gate and being trapped by a second, locked gate.
"[T]he essence of plaintiff’s claim is that employees of [NYCTA] were negligent in locking the gate to the street, while not locking the high wheel gate through which passengers may leave the platform to reach an area that leads to the exit stairs, thus allowing a person such as plaintiff to walk into a confined area from which she was unable to leave * * *
"Under the circumstances alleged herein, locking one gate and not the other clearly does not call into issue a question of allocation of governmental resources, and such activity is not of the type involving 'policymaking regarding the nature of the risks presented’ * * * and thus is beyond the boundary of the Weiner immunity. The act here is more akin to a claim of injury resulting from improper maintenance of the physical condition of the facilities, which admittedly is not subject to such immunity.” (Popplestone v New York City Tr. Auth., supra, at col 6.)
While the instant plaintiff was not trapped on all sides by physical barriers, as was Ms. Popplestone, she was cornered below the ground by two males with a deadly weapon, a felonious intent and a vicious propensity. In a very real sense, she was just as trapped. More significantly, she was lured into her trap by the same kind of negligent conduct on the part of the NYCTA as was found in Popplestone (supra). (We note, in passing, that a jury verdict was recently rendered in favor of plaintiff in that case.)
In Musacchio v New York City Tr. Auth. (Sup Ct, NY County, Mar. 27, 1990, index No. 40272/90 [decision granting defendant NYCTA’s motion for summary judgment]), Judge Lehner dismissed a claim based on NYCTA’s decision to "close one means of access to and egress from the station”, which was "merely the result of a governmental decision to limit entry and exit at that location during certain hours.”
Finally, in Aviles v City of New York (Sup Ct, NY County, Apr. 23, 1990, index No. 1646/81 [decision granting defendant NYCTA’s motion for summary judgment]), Judge Lehner *84 reached the same result as in Musacchio (supra), and on the same reasoning. However, in Aviles, as in the instant case, the plaintiff claimed that "the high wheel gate turnstile was locked while the entrance from the street was unlocked.” Judge Lehner concluded that Ms. Aviles thus was not "trapped,” as was Ms. Popplestone.
The instant case is somewhat distinguishable from Aviles (supra) since there is no mention in that case of a misleading entry sign. In any event, in our view the question should not be whether the plaintiff is trapped on all sides by physical barriers. (As alluded to above, a knife-wielding male, with an accomplice, intent on robbery is often more than enough of a barrier for a surprised and cornered female in a subterranean setting.) Rather, the question should be whether NYCTA’s allegedly negligent acts and/or omissions were undertaken in a proprietary or a governmental capacity. We hold today that in the instant case NYCTA’s alleged acts and/ or omissions were well within the proprietary sphere.
Finally, we must determine what particular duty, if any, was allegedly breached by NYCTA. In Cruz v New York City Tr. Auth. (136 AD2d 196, 198 [2d Dept 1988] [plaintiff fell when brushed against while sitting on railing of stairway landing of elevated subway station]), the Court stated that as a common carrier NYCTA "is required to exercise reasonable or ordinary care, in view of the dangers to be apprehended, in providing and maintaining safe and adequate stairways in its stations.” The issue at bar is not one of allocating police resources or providing security, which is clearly a governmental function. Rather it is a question of whether the action or inaction of NYCTA in not locking the stairway gate and/or changing the entrance sign after bolting the turnstile closed was reasonable under the circumstances. In the instant case, the stairway (and adjacent area) at issue may not have been inherently unsafe or inadequate. However, crime is a fact of life in this City. No one who lives here could fail to appreciate the fact that being assaulted in a subterranean cul-de-sac is, in a very real sense, a "danger to be apprehended.” Whether or not NYCTA "exercised reasonable or ordinary care” in view of this danger, and whether any failure to do so was the proximate cause of foreseeable injury to the plaintiff, cannot be determined on a motion to dismiss or a motion for summary judgment. "Negligence cases by their very nature do not usually lend themselves to summary judgment, since often, even if all parties are in agreement as to the underlying facts, *85 the very question of negligence is itself a question for jury determination.” (Ugarriza v Schmieder, 46 NY2d 471, 474 [1979].)
CONCLUSION
Thus for the reasons set forth herein, the motion to dismiss is granted as regards the MTA, and the motion to dismiss or for summary judgment is denied as regards NYCTA.