Mu Ying Zhang v City of New York (2025 NY Slip Op 50962(U))

[*1]

Mu Ying Zhang v City of New York

2025 NY Slip Op 50962(U)

Decided on June 11, 2025

Supreme Court, Kings County

Mostofsky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 11, 2025
Supreme Court, Kings County

Mu Ying Zhang, Plaintiff,

against
The City of New York et al., Defendants.

Index No. 508723/2023

Plaintiff: Walia & Walia, PLLC.
Defendants:
The City of New York: New York City Corporation Counsel and Alexandra Hastings
MTA New York City Transit: Jonathon Ira, Lipton, Steven; Mark Steven, Silverberg; and George Connor, Shea
New York City Transit Authority: Jonathon Ira, Lipton, Steven; Mark Steven, Silverberg; and George Connor, Shea
David Artis: Jonathon Ira, Lipton, Steven; Mark Steven, Silverberg; and George Connor, Shea
Raven Haynes: Jonathon Ira, Lipton, Steven; Mark Steven, Silverberg; and George Connor, Shea
John Doe meant to be the station agent booth employee of THE CITY OF NEW YORK, MTA NEW YORK CITY TRANSIT, NEW YORK CITY TRANSIT AUTHORITY who allowed Frank James to enter through the service entrance door: None recorded.

Steven Z. Mostofsky, J.

The following e-filed papers read therein: NYSCEF Doc. Nos.: 
Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed 10-136
Opposing Affidavits (Affirmations) 61-127
Affidavits/ Affirmations in Reply 89-148
Exhibits Var.
On April 12, 2022, plaintiff V.C. was a passenger on a Manhattan-bound N train. Frank James, already on the train, threw a smoke grenade in the car.[FN1]
He began shooting at the passengers with a Glock 17. James shot V.C. in the hip and shin. The doors between the cars were locked. The passengers could not escape to another car on the train.
James was charged on April 13 with using a weapon to interfere with mass transit. Eventually, they charged him with committing a terrorist act. He pleaded guilty and was sentenced to 10 life sentences plus another year for using a gun during the crime.
V.C., through his mother and natural guardian, Mu Ying Zhang, sued the City of New York, New York City Transit Authority, David Artis - the train motorman, Raven Haynes - the conductor, and John Doe - the station booth transit clerk, for negligence.[FN2]

On September 24, 2024, Justice Frias-Colon dismissed the case against the City of New York (NYSCEF Doc. No. 131).
Transit moves to dismiss the case for failure to state a cause of action under CPLR § 3211(a)(7), (Motion Sequence 2). Motion Sequence 3 seeks to preclude Transit from offering evidence at trial or compelling it to provide discovery, and Motion Sequence 4 requests that the Court vacate the preliminary conference order. Motion Sequence 5 asks the Court to strike Transit's fifth affirmative defense and hold Transit's motion to dismiss in abeyance until the plaintiff's discovery motion is determined by the Court.
The Public Authorities Law § 1212 waives immunity for negligent acts by transit employees. The Court of Claims Act § 8 provides that the State waives immunity from liability and consents to actions brought against it in the Supreme Court. It waives sovereign immunity - not governmental immunity. Municipalities are immune from negligence arising from their governmental function absent a special duty to the injured person (Applewhite v. Accuhealth Inc., 23 NY2d 420, 426 [2013]).
A special duty can be formed in three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation " (McLean v City of New York, 12 NY3d 194, 199 [2009]). Through breach of a statutory duty, the "governing statute must authorize a private right of action" (id. at 200).
The plaintiff claims that the Transit Rules of Conduct and Violations create a special duty to those on the transit system. The rules list violations and concomitant fines. The prohibited acts include breach of peace, carrying a weapon, an explosive, a hazardous object, carrying a cart more than 30 inches onto public transportation, failure to pay a fare, or interfering with the safe and efficient operation of facilities.
Here, Transit never assumed positive direction or control of a "known blatant or dangerous safety violation" (Pelaez v Seide, 2 NY3d 186, 204 [2004]). James entered the train on his own and committed a terrorist act. Transit had no control. Transit Rule §1050.6 provides that no person may perform acts that interfere with transit service. This is not intended to protect passengers, but rather to require them to follow procedures. Rule § 1050.12 merely "empowers" police to issue violations for a breach of the rules. It is discretionary.
The plaintiff believes the station clerk had an obligation to check the size of James's cart. However, the clerks are directed not to leave their booths (Lee v. NYCTA, 249 AD2d 93, 94 [1st Dept. 1998]). There is no definite claim as to what the clerk saw or could have seen. The claim that surveillance equipment failed is contradicted by the fact that a photograph of James about to enter the system exists.[FN3]

The Transit Rules did not create a special duty to the plaintiff. Therefore, liability depends on whether Transit was engaged in a "governmental function" or a "proprietary function" (Applewhite, id).
The paradigm cases that distinguish between proprietary and governmental functions are Miller v. State of New York (62 NY2d 506 [1984]) and Weiner v. MTA (55 NY2d 175 [1982]).
In Miller, a 19-year-old student at Stonybrook University, New York, was doing her laundry in the dormitory. Someone entered through an open door, held her at knifepoint, threatened to mutilate her, took her through a second open door, and raped her twice.
The plaintiff brought a negligence action against the State. The Court held that in operating a dormitory, SUNY had the same duty to provide security at the dormitory as a private landlord had in providing security at their building. The Court determined the State was liable because it carried out a proprietary function (Miller at 507). SUNY failed to supply minimal security measures in the face of foreseeable criminal acts on tenants (id. at 513). The Court noted that the State governmental function might exist regarding general security on the campus.
Miller explained that a government's conduct "may fall within a continuum of responsibility to individuals." For example, this excludes maintenance of general police and fire protection. The Court must determine if the case arose through a proprietary or government function to determine liability. Any issue relating to the safety of a claimant must be "carefully scrutinized to determine which point along the continuum the negligent act falls" (id. at 512).
In Weiner, the plaintiff entered a subway station during a time when the station was unattended. She descended the steps, and someone attacked her with a knife. They cut her pocketbook strap and her wrist (Weiner at 179). The Court denied the victim's negligence claim. It determined that Transit had no duty to protect a person or premises from an attack by a third person. She lacked a "special relationship" with Transit (id.). Further, Transit had no responsibility to place surveillance at the station or warn people when police were unavailable (id. at 182; see Clinger v. NYCTA, 85 NY2d 957, 951 [1995]). The matter fell within the scope of a governmental function.
In Adams v. NYCTA (211 AD2d 285, 288 [1st Dept. 1995]), the plaintiff placed money through the slot at the token booth. Ms. Bowman, the clerk, refused to give the plaintiff directions. When the plaintiff deposited the token in the turnstile, the clerk left the booth from behind and struck the passenger on her neck, back, and choked her. The Court held that Ms. [*2]Bowman's actions were "outside the general scope of employment... and foreign to the interest of her employer" (Adams v New York City Tr. Auth., 211 AD2d 285, 294 [1st Dept. 1995], affd, 88 NY2d 116 [1996]).
The Court placed the case along the Miller continuum. It noted that the New York State Legislature created Transit to perform "an essentially governmental function by operating the transit system in New York" (id. at 296). It followed Weiner to determine that Transit enjoyed a "policy-based immunity from liability for assaults on its passengers" (id).
In Crosland v. NYCTA (68 NY2d 165 [1986]), the Court held that Weiner had limits. A "group of hoodlums, armed with baseball bats, tire irons, wooden clubs, and chains" jumped a turnstile. They "savagely attacked" students, returning from a talent show, who waited at the station to change trains. One student was murdered.
The Court applied the Weiner principle. Transit claimed it lacked liability since it owed no special duty to the victim. Yet, while there were no police at the station, witnesses claimed several track workers saw the incident and did not call for help. At least two trains passed through the station, and the Transit staff "observed the attack." They did nothing (id. at 167).
The Court explained that immunity for action or inaction by a transit employee depends on whether it falls within the boundaries of the "policy-based governmental immunity established" by Weiner (id. at 179).
The complaint alleged that Transit employees who saw the attack unreasonably failed to summon aid, although they could have done so without risk. Their "failure to summon help without placing themselves in danger is within the narrow range of circumstances which could become actionable" (Crosland at 170). It was below Weiner on the continuum. The Court found Transit liable.
The Matter of World Trade Center Bombing (17 NY3d 428 [2011]), involved litigation arising from the 1993 World Trade Center (WTC) bombing. The bomb created a crater "six stories deep and killed six people, including Port Authority employees" (id. at 436). Six hundred forty-eight lawsuits were commenced against the Port Authority (PA), which controlled the WTC. Plaintiffs sought compensation for the injuries sustained by the bombing.
Before the bombing, the PA conducted studies about its vulnerability to terrorist attacks on its property. It beefed up security. But it did not follow all the recommendations. Some actions were litigated jointly, while others went to a Steering Committee to oversee various claims (id. at 439). The complaint alleged that the PA negligently failed to "provide security, follow suggestions in the reports, and take additional security measures" (id. at 452).
Two Supreme Court cases held the Port Authority responsible for the WTC bombing. It held that the PA exercised a proprietary function regarding the WTC (id. at 438; Matter of World Trade Center Bombing Litigation, 3 Misc 3d 440, 466-467 [Sup. Ct. NY. Co., 2024] affd 13 AD3d 66 [1st Dept, 2005]; In the Matter of World Trade Center Bombing Litig., Steering Comm (51 AD3d 337]).
The Court concluded that the PA reached a reasoned discretionary conclusion... in rendering informed decisions that involved balancing of risks, competing interests, and allocation of resources (WTC at 444). Its failure to secure the WTC garage against terrorist attacks derives from an allocation of police resources (id at 445). Despite the PA's waiver of immunity "for tortious conduct," the Court held that it waived only sovereign immunity — not governmental immunity (See McKinney's Uncons. Law § 7101, 7106 [L. 1950 Ch. 301 § 1, 6]). The case was analogous to the Weiner and Miller "progeny" and within the Miller continuum (id [*3]at 445). The Court dismissed the case.
This Court holds that Transit did not owe V.C. a special duty. Police staffing at the station was a discretionary governmental function low on the Miller continuum. The transit clerk was obliged to remain in the booth and had no duty to examine James's cart size. Despite plaintiff's claim that Transit's decision to lock the doors between cars was a proprietary function, it did so to promote safety — a governmental function (McCord v. City of New York, 298 AD2d 438 [2d Dept. 2002]), protected by governmental immunity (Zambrana v New York City Tr. Auth., 14 AD3d 23, 25 [1st Dept 2004]).
And even if Transit lacked immunity, its negligence was not the proximate cause of V.C.'s injuries. His injuries were caused by an unexpected criminal act which "constitutes a superseding and intervening cause relieving defendant from liability as a matter of law" (Falcone v. MABSTOA 166 AD2d 271 [1st Dept, 1990]; see, Ingrassia v. Lividikos, 54 AD3d 721, 724 [2nd Dept, 2008]); Harrell v. NYCTA 221 AD2d 591 [2nd Dept, 1995].
After oral argument and a review of the papers and applicable law, the Court holds:
Transit's motion to dismiss the complaint under CPLR § 3211 (a)(7) (Motion Sequence 2) is granted.
Plaintiff's motion to preclude Transit or compel discovery, (Motion Sequence 3), Transit's motion to vacate the preliminary conference order (Motion Sequence 4), and plaintiff's cross-motion to strike Transit's fifth affirmative defense and hold Transit's motion to dismiss in abeyance until the Court decides its discovery motion (Motion Sequence 5), are denied as moot.
This is the Court's decision and order.
E N T E R:

Footnotes

Footnote 1:NYSCEF Doc. No. 8

Footnote 2:Public Authorities Law § 1263 created the Metropolitan Transit Authority as a public benefit corporation. PAL § 1201 (1 and 2) created the New York City Transit Authority. The chairman of the New York City Transit Authority board is the chairman of the Metropolitan Transit Authority. Both authorities and the employee-defendants are referred to as "Transit" in the decision. 

Footnote 3:NYSCEF Doc. No. 9